GREEN v. THE MIL. & ST. P. R. Co.

1. **Common Carrier:** DELIVERY OF BAGGAGE: CUSTOM.   Whether or not the custom had been established that the delivery of baggage at the station without notice to the carrier is regarded by the latter as a delivery to its servants, binding upon itself, is a question of fact to be submitted to the jury.

2. ————: LIABILITY FOR BAGGAGE.   To render a carrier liable for baggage, the owner need not have placed himself in such situation that he cannot withdraw the baggage.  The question of liability is determined by the *intention* of the owner at the time he places his baggage in the hands of the carrier's servants.

3. ————: ————: ACCEPTANCE BY CARRIER.   G. advised defendant's agent that she intended to take the train the following morning.  She sent her baggage, properly marked, to the station the evening before her departure, as was the custom with passengers intending to take the morning train, and it was locked up in defendant's baggage room: *Held*, that the facts constituted an acceptance of the baggage by the carrier.

*Appeal from Winneshiek District Court.*

MONDAY, OCTOBER 25.

THIS is an action to recover the value of a trunk and contents alleged to have been lost whilst in the possession of defendant as a carrier.  There was a jury trial, and a verdict and judgment for plaintiff for $400.  Defendant appeals.  The case was before us on a former occasion.  See 38 Iowa, 100.

*Thomas Updegraff*, for appellant.

Actual delivery, even when sanctioned by custom and the understanding of the parties, must be accompanied by express notice, to charge the carrier.  (*Packard v. Getman*, 6 Cowen, 757; Angell on Carriers, 2d ed,. § 145; Story on Bailments, 4th ed., § 532; 2 Kent, 8th ed., 605; Edwards on Bailments, 1st ed., 453.)  The contract to carry a passenger and his ordinary baggage is entire, and his fare is the consideration for carrying and caring for his baggage.  (Edwards on Bailments, pp. 550–1, 580–1; 9 Wend., 85; 6 Hill., 586.)  The liability for baggage cannot exist, except as an *accessory* to the principal contract.  (Story on Bailments, 4th ed., § 498.)

*John T. Clark & Co.*, for appellee.

The defendant could waive the right to refuse to receive the baggage until fare was paid, and this waiver might be implied from usage or custom. (*Green v. Mil. & St. P. R. Co.*, 38 Iowa, 100.) The liability of a common carrier attaches when the property is delivered to him for transportation. (*Blossom v. Griffin*, 13 N. Y., 569; Redf. on Railways, § 129; Story on Bailments, § 533.) Such delivery may be actual or constructive. (*Merriam v. H. & N. H. R. Co.*, 20 Conn., 354.) The liabilities of common carriers are subject to modification by usage or custom. (2 Redf. Am. R'y Cases, 161; Story on Bailments, § 532.) The usage of a carrier to receive property left at a certain place without notice of delivery will render it liable for property so left in the absence of notice. (2 Redf. on Railways, § 129, note 1; Parsons on Con., 180–1, note x.)

DAY, J.—I. Upon the trial evidence was introduced tending to establish the following facts:

"For two and one-half years previous to the loss in question, plaintiff had been teaching school in Decorah, Iowa. She spent her vacations at Boscobel, Wisconsin, whither she was in the habit of going three times a year.

On the afternoon of August 30th, 1870, she talked with the agent at Boscobel about going back to Decorah, and informed him that her trunk was going to the depot that afternoon to take the early morning train west. In the evening of the same day plaintiff sent her trunk to defendant's depot, labeled with her name printed on a card, and "Decorah, Iowa," written below it, as she had been in the habit of doing three times a year, during the previous two and one-half years.

The defendant's employes being at supper, the drayman left the trunk in the corner of the depot, used as a sitting room, and notified no person at the depot of leaving the trunk there. The drayman left the baggage as he had often done before under similar circumstances. Passengers taking the morning train west at Boscobel usually sent their baggage to the depot the evening before. After plaintiff's trunk was sent to the

depot it was seen in defendant's baggage room. The agents at Boscobel had always refused to sell plaintiff a ticket, or to check her trunk to Decorah, and she had been in the habit of paying her fare and getting her check on the train. On the night of August 30th, defendant's depot was burned, and plaintiff's trunk has not since been seen. The next morning plaintiff went to the depot for the purpose of taking passage to Decorah, but was obliged to abandon the intention because of the loss of her trunk. The court, amongst other things, instructed the jury as follows:

"There must have been a delivery and acceptance of the trunk to charge defendant, or it must have been delivered at the usual place for delivering baggage, and, if delivered in this way, in order to charge defendant, without notice to its agents of delivery, such delivery must have been with defendant's express consent or authority.

This express assent may be presumed from the course of business of the defendant, and in determining this question you will consider: Does the evidence establish a course of business and custom to the effect that a delivery of baggage at the station house without notice to defendant's agents was regarded by defendant as a delivery to its servants, and whether plaintiff's trunk was received under this custom. In determining this question you will consider all the evidence in the case, including the former practice with defendant." The giving of this instruction is assigned as error. The objection urged to this instruction is, that there is no evidence

1. COMMON carrier: delivery of baggage: custom.

tending to prove a custom to dispense with notice, and that the question of the existence of such custom should not have been submitted to the jury. When this case was before us upon a former appeal (see 38 Iowa, 100), we held that the determination of the fact, whether a custom had been established that a delivery of baggage at the station house without notice was regarded by defendant as a delivery to its servants, should have been left to the jury. And for a refusal to so submit the question, the cause was reversed.

The evidence of such custom was no more satisfactory then than now, and that decision determines this question.

II. The defendant assigns as error the refusal of the court to give the following instructions: "2. At the moment a railroad company receives the ordinary baggage of the passenger, under a contract to carry the same with the passenger, the liability of the company as a common carrier attaches. It is not enough, in order to create this liability, that the baggage was received by the railroad company, but it must be received under a contract to carry both the passenger and his baggage, and this contract to be binding must be mutual and bind both parties. Applying these principles to this case, if you find that the trunk was received by an agent of the defendant, you will then inquire what the intention of the parties was in regard to the transaction. If by that intention the plaintiff undertook and agreed to become a passenger, and the defendant undertook and agreed to carry such plaintiff and her baggage, and the trunk was received in pursuance of this understanding, the defendant became a common carrier of the same. On the other hand, if the plaintiff placed herself under no obligation to become a passenger, but only expressed an intention to become a passenger at a future time, and if, under the intention of the parties, the plaintiff could rightfully withdraw her trunk at any time without taking passage, then the defendant's possession of the trunk during the night was not that of a common carrier, and plaintiff cannot recover in this action."

"3. It is alleged that the trunk in question was delivered to the defendant as the baggage of plaintiff as a passenger on defendant's railroad. And there is no pretense of any obligation on the part of the defendant to carry the trunk except as the plaintiff's baggage. The contract to carry a passenger and his ordinary baggage is entire, and the consideration is entire. In other words, the ordinary compensation paid by the passenger is the only consideration for carrying his ordinary baggage. Hence the obligation to carry the baggage in this class of cases cannot be separated from the obligation to carry the person. If the plaintiff left the trunk in question with the agent the

night before the morning on which she intended to take the train, and paid no fare, but simply expressed an intention to take the train the next morning, she did not, by so doing, become a passenger, and was under no obligation to become a passenger at all, and the defendant's obligation to take care of a passenger's baggage did not arise unless she afterwards became a passenger, and the plaintiff, without further proof, cannot recover in this case."

These instructions, though plausible, are unsound. They both recognize the doctrine that a railroad company assumes no duties as a common carrier respecting the baggage of one, so long as he may withdraw his baggage and conclude not to take passage. A person may be entitled to be protected as a passenger without purchasing a ticket or entering a car. *Allender v. C. R. I. & P. R'y Co.*, 37 Iowa, 264 (270). Yet it cannot be doubted that, before doing these acts, he might abandon his intention of taking actual passage. If a person can demand protection to himself as a passenger, he may also require that his baggage be cared for as the baggage of a passenger. Suppose a party at a railway station places his baggage in possession of the baggage-master and procures a check, and proceeds to purchase a ticket, but before he makes the purchase his baggage is stolen, in consequence of which he is compelled to forego the journey, and determines not to buy a ticket. May he not recover on account of the loss of his baggage? Yet he was in a condition in which he might, without any breach of contract, have changed his mind and determined not to become a passenger upon that train. And, if the doctrine of the instructions refused be correct, he could not recover. The true question is not what the party might do, without the incurring of legal liability, but what, in view of all the circumstances disclosed, did he intend to do? The instructions do not present nor call upon us to determine the distinction between the liability of a common carrier and a warehouseman.

III. Error is assigned upon the permitting of plaintiff to testify as to the cost of some of the articles contained in the trunk, and to speak respecting a memorandum of the contents

of the trunk which was not produced.    If it should be conceded that the action of the court was erroneous, it was error without prejudice.    There was independent evidence that the contents of the trunk were of the value of four hundred dollars, and as to this question there was no conflict.    The defendant offered no evidence as to value.

IV.    It is claimed that the evidence does not sustain the verdict, that there is no proof of the delivery of the trunk to, and an acceptance by, the defendant. The statement before made shows that the agent of defendant was advised that plaintiff intended to become a passenger on the morning train; that she sent her trunk to the depot the evening before, properly marked, as was customary with passengers taking the morning train west from that point, and that the trunk was afterward locked up in the defendant's baggage-room.    From this evidence the jury were fully justified in finding there was an acceptance of the trunk by defendant.

3. ——: ——: acceptance by carrier.

AFFIRMED.