## J. C. LEWIS v. F. R. NUNN AND CHARITY NUNN.

(Filed 13 October, 1920.)

1. **Mortgages—Extension of Time of Payment—Contracts—Consideration.**

Promise of the mortgagee to extend time to the mortgagor for the payment of the mortgage note, without money, has no legal consideration, and is unenforcible.

2. **Mortgages—Serial Notes—Default—Tender.**

Where several notes secured by mortgage are in series, and due at different dates, with provision that upon default in payment of one, all shall become due and payable with interest, after such default in the payment of the note first becoming due, a tender of payment of the note thus due, and interest on all of them in the series, is an insufficient tender.

3. **Mortgages—Sales—Silence of Mortgagor—Equity—Estoppel.**

When the mortgagor attends the sale of the land under the mortgage, and while claiming the sale to be unlawful by reason of tender of payment of the mortgage debts, stands by and says and does nothing to put bidders upon notice thereof, he will be estopped in equity, and not afterwards heard to impugn the title of the one purchasing for value and without notice of his claim.

4. **Contracts—Deeds and Conveyances—Expressions of Parties—Ambiguity—Evidence.**

The designation of the character of a written contract, as therein expressed by the parties, may be received as evidence thereof in case of ambiguity permitting an interpretation of the instrument.

5. **Mortgages— Written Contracts— Contemporaneous Agreements— Options—Election of Rights.**

A mortgagor and mortgagee, contemporaneously with the execution of the mortgage, executed a collateral written contract, called an option by the parties, and signed only by the mortgagee, giving the mortgagee the right to purchase the lands described at a certain price, in the event of the mortgagor's default in the payment of any note in a series that the mortgage secured, with further provision allowing the mortgagor to pay

this sum within a prescribed time. The mortgage was to enable the mortgagor to take up a prior mortgage, and to obtain an additional sum of money: *Held*, the mortgage and collateral written contract should be construed together,. and thus interpreted, the written contract was merely an option which the optionee might elect to exercise under its provisions, or sell the lands under the terms of his mortgage.

APPEAL by plaintiff from *Daniels, J.,* at the November Term, 1919, of LENOIR.

This is an action to recover possession of a tract of land, and to declare the plaintiff the owner thereof.

The defendants, Nunn and wife, being the owners of the land, subject to a mortgage to one Edwards, procured F. F. Loftin to pay off the Edwards debt,. and to make them an additional loan of $191, making the total amount due Loftin $1,075, and on 1 November, 1917, they executed a deed of trust to the Kinston Insurance and Realty Company, conveying said land to secure said debt, which was divided into four payments, $75 being due 1 November, 1918; $200 1 November, 1919; $200 1 November, 1920; $600 1 November, 1921.

The deed in trust contained provision that on failure to pay either of said notes or interest thereon when due, the whole debt should become due, and in that event authorized a sale under the power in the deed.

The defendants failed to pay the first note, and the land was sold on 15 February, 1919, when the plaintiff became the purchaser at the price of $1,805, and, having complied with the terms of the sale, a deed was executed conveying said land to him.

The defendants insist that the sale was invalid, and that they have the right to redeem on the following grounds:

1. That they tendered the amount of the first note, and interest on the whole debt, before the sale.

This contention is based on the following evidence of the defendant Nunn:

"The first note secured by the deed of trust became due on 1 November,. 1918. I saw Mr. Loftin about it, and he agreed to extend, and did extend, the time of payment of the note and interest due upon the indebtedness. The matter of payment was thereafter mentioned between us, and Mr. Loftin gave further extension of time for the payment. While I was trying to get up the money to pay the note and interest agreeably to my understanding with Mr. Loftin, my attention was called to an advertisement of my said lands for sale. Soon thereafter I succeeded in getting up the money sufficient to pay the note and interest due, which I tendered to Mr. G. C. Moore, attorney for Mr. F. F. Loftin, on 8 February, 1919, his said attorney, Mr. Moore, at the time making the following entry on the deed of trust:

"'2/8/1919, Charles F. Dunn, for Fred Nunn, offered $143.71 in cash in settlement of the $75 note, and interest on same to date; and interest on the balance until 11/1/18.   G. G. M.'

"At the time the land was being advertised for sale under the deed of trust, but the sale day had not arrived. I attended the sale and saw Mr. Moore, attorney for F. F. Loftin, knock the land off to the plaintiff Lewis."

There is no evidence that the plaintiff had notice of the tender, and the defendant, although present at the sale, and knowing that the plaintiff was there buying, said nothing about it.

2. That on the day the deed in trust was executed, but prior thereto, they executed and delivered to the creditor Loftin the following paper-writing, which they insist is a contract, and operated to prevent a sale:

"This agreement made this 1 November, 1917, between F. R. Nunn and Charity Nunn, his wife, of the county of Lenoir and State of North Carolina, of the first part, to F. F. Loftin, of the county of Lenoir and State of North Carolina, of the second part, witnesseth:

"That, whereas, J. F. Edwards holds a note and mortgage, upon which the sum of $884 is now due, and the said Edwards is threatening foreclosure, and the first parties being desirous that the said mortgage be not foreclosed, but that they be loaned an additional sum of $191, and that the total, one thousand and seventy-five dollars ($1,075), be divided in a series of four notes, due one, two, three, and four years from date, and the second party being desirous of buying the said property from the said first parties, has offered them $200 per acre, according to the results of any reputable surveyor, the said lands being estimated as containing about seven (7) acres, and the first parties having agreed to sell at that price, actual measurement.

"Now, therefore, in consideration of the premises and the payment by the second party to the first parties of the sum of five dollars ($5), receipt of which is hereby acknowledged, the first parties do hereby agree to sell to the second party and his heirs and assigns, and do agree to convey to him and his heirs and assigns in fee simple, the following described lands, viz.:   (Description omitted, but same as in trust deed.)

"And, whereas, the second party has agreed to advance the amount desired by the first parties, to be secured by a deed of trust and notes in the sum of $75, due 1 November, 1918; $200, due 1 November, 1919; $200, due 1 November, 1920; $600, due 1 November, 1921, with 6 per cent interest from date, interest payable annually; but the said notes and deed of trust have not yet been executed, all parties intending that this option shall first be executed; and it is further agreed that the second party shall exercise this option only upon the first parties' failure to pay the said notes, or any one, as they become due.

11—180

"It is the intent of the parties hereto that the second party shall furnish the funds with which to prevent the sale of the said lands at this time, and also furnish to said first parties $191 additional, the second party to benefit from this contract only to the extent that he shall receive 6 per cent interest on his money, and, in case the first parties again fail to make prompt payments on their indebtedness, that the second party shall be a preferred purchaser at the sum of $200 per acre, that sum being considered a fair, full, and reasonable value for said lands, especially considering the said lands subject to the life estate of Lucy Patterson. The life of this option shall be four years from this date, provided the deed of trust heretofore mentioned shall not have been canceled prior to said four years.

"And the second party, desiring that the first parties shall have no hardship thrust upon them, does hereby agree that at the time of the execution of the said deed from the first parties to the second party under this agreement, the first parties shall be given a contract by which they may be allowed to repurchase the said lands within three months of the date of the said deed upon the first parties paying to the second party and his heirs and assigns the sum paid to the first parties as the purchase price of said lands, plus the interest thereon, and the costs and expenses incident to the writing of the papers, said costs and expenses not to exceed $25."

This paper was duly registered. On the day of sale, and before the land was sold, it was announced that Loftin claimed no rights under this paper.

The following issue was submitted to the jury:

"1. Is the defendant, F. R. Nunn, entitled to redeem the lands in controversy in this action? Answer: 'Yes.'"

The court instructed the jury that if they believed the evidence they should answer the issue "Yes," and plaintiff excepted.

The jury answered the issue "Yes." Upon the coming in of the verdict, the plaintiff moved the court to set the verdict aside, and for a new trial. Motion denied, and the plaintiff excepted.

The court, upon the verdict and the admissions of plaintiff and defendants, rendered judgment in favor of the defendants, as set out in the record. To the judgment as rendered by the court the plaintiff excepted.

*Moore & Croom and Cowper, Whitaker & Allen for plaintiff.*
*Rouse & Rouse for defendant.*

ALLEN, J. The instruction to the jury, to which exception is taken, is predicated on the correctness of the two positions of the defendants, which it is therefore necessary to examine.

1. Accepting the evidence of the defendants as to the tender to be true, it shows that after the first note, secured in the deed in trust, became due, the creditor Loftin promised to extend the time of payment, and that before the sale tender was made of the amount of the first note, and interest on the whole debt, and, in our opinion, these facts do not impair the title of the plaintiff acquired at the sale.

The promise to extend the time of payment of the first note is without consideration, and therefore cannot be enforced (*Bank v. Sumner*, 119 N. C., 595; *Lumber Co. v. Christenbury*, 155 N. C., 260), and as by the terms of the trust deed the whole debt became due upon failure to pay either note, it was necessary, in the absence of an agreement supported by a consideration, to tender payment of all of the notes, which was not done.

Again the defendant was present at the sale, and saw the plaintiff buy without protest on his part, and, as said in *Burnett v. Supply Co.*, at this term, "There is a wholesome principle in our law to the effect that one who stands by and witnesses in silence a wrongful sale of his property, under circumstances that call on him to speak, will not afterwards be heard to impugn the validity of the sale in so far as the title of the purchaser is concerned."

The principle, while recognized, was not applied in that case, because the action was not against the purchaser to redeem, but against the mortgagee, who had wrongfully sold the land when there was nothing · due.

One who stands by and sees his property bought by another, without protest and without notice of his claim, "Is not permitted to assert his interest afterwards as against the innocent buyer of the property, and to his prejudice, because he was silent when he should have spoken, and now the law will not hear him when he should be silent. He is equitably estopped from being heard and asserting his claim to the property." *Hardware Co. v. Lewis*, 173 N. C., 295.

If, however, the tender was good, and if the defendants are not estopped, the plaintiff is not affected, because he is a purchaser for value without notice of the tender.

The question was discussed in *Debnam v. Watkins*, 178 N. C., 240, and, after placing this Court among those holding that a mortgage passes the title, and is not a mere security, the Court said: "It seems, therefore, that in those States a *bona fide* purchaser for value and without notice of tender gets a good title. It is also held that a mortgagor who has notice of an intended sale and allows it to proceed without objection cannot afterwards show a tender, or even a payment in full, of the mortgage debt, and thereby defeat the title of a *bona fide* purchaser for value without notice. *Cranston v. Crane*, 97 Mass., 459; Jones on Mortgages, sec. 1788."

It is therefore apparent that the first position of the defendants cannot be sustained.

2. The second question depends on the construction of the paper-writing executed on the same day as the deed in trust.

Is it a contract, binding on the parties, which is to be construed with the deed, and which operates to modify its terms by postponing the time of sale, or is it an option or offer which would have no legal effect until accepted by the creditor?

It is called an option by the parties, and while this is not controlling, "There can be no doubt that in determining the meaning of an indefinite or ambiguous contract, the construction placed upon the contract by the parties themselves is to be considered by the Court. . . . In fact, where, from the terms of the contract or the language employed, a question of doubtful construction arises, and it appears that the parties themselves have practically interpreted their contract, the courts will generally follow that practical construction. It is to be assumed that parties to a contract know best what was meant by its terms, and are the least liable to be mistaken as to its intention; that each party is alert to protect his own interests and to insist on his rights, and that whatever is done by the parties during the period of the performance of the contract, is done under its terms as they understood and intended it should be. Parties are far less liable to have been mistaken as to the meaning of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it of what was intended by its provisions." 6 R. C. L., 852 and 853.

It is not signed by the creditor, and ordinarily both parties sign a bilateral written contract.

The creditor does not agree to buy, and in fact there is no promise on his part contained in the writing except upon condition that he accepted the option and took a deed for the land.

The paper and the trust deed were executed on the same day as parts of the same transaction, and "The general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance." 6 R. C. L., 851, and they should be held to make one harmonious whole, if practicable, and not destructive of each other.

Read in the light ·of these rules of construction, and considering the language used by the parties, the transaction appears to be this:

The defendants induced Loftin to pay off the Edwards mortgage, and executed the deed in trust to secure him, in which the debt was divided into four annual payments, differing in amount with provision that the whole debt should become due upon failure to pay either note, and with power to sell in that event.

They also gave Loftin the option to buy the land, seven acres, at $200 an acre, within the four years while the notes were maturing, but this option could not be exercised by Loftin except upon failure to pay one of the notes, and if exercised, and a deed made to Loftin, it was stipulated that the defendants should have three months from the date of the deed to redeem, and so understood, the option contract did not prevent the exercise of the power, because Loftin did not elect to buy, but preferred to rely on the trust deed, and on the day of sale renounced all claim under the option in the presence of the defendants, to which they made no objection.

If this is not the correct view, and the position of the defendants should be maintained, the power of sale in the trust deed is meaningless, and might as well be stricken out, because it could never be exercised. Certainly not before default, and not afterwards if Loftin in that event was obliged by contract to buy at private sale.

We are therefore of opinion that there is error in the instruction to the jury, and that on the facts as now presented the plaintiff is the owner of the land.

New trial.