A. T. SUGG v. NORTH CAROLINA AGRICULTURAL CREDIT
CORPORATION ET AL.

(Filed 3 October, 1928.)

1. **Principal and Agent—Rights and Liabilities as to Third Parties—Ratification—Estoppel.**

Where a depositor is permitted by the bank to draw on an anticipated deposit to be made from an expected loan from a third person, and the loan is made, the lender sending in care of the bank a check for the depositor, and upon receiving the check the bank endorses it for the depositor and places the amount to his credit, and thereafter the depositor draws on this deposit, with full knowledge of the facts: *Held*, the conduct of the depositor is a ratification of the endorsement by the bank, and he is estopped to deny this agency, and claim that the endorsement was without authority.

APPEAL by defendants from *Cranmer, J.,* at February Term, 1928, of LENOIR.

Civil action to have note of $6,000 given by plaintiff to the North Carolina Agricultural Credit Corporation delivered up and two certain crop liens executed to secure same canceled of record.

In the spring of 1925 the plaintiff obtained a loan from the North Carolina Agricultural Credit Corporation (hereafter called Credit Corporation) through C. L. Blount, cashier of the Snow Hill Banking and Trust Company. Plaintiff's note and crop liens were executed 3 February, 1925. The loan was finally approved, and, on 30 April the Credit Corporation drew its check on the Raleigh Savings Bank and Trust Company for the amount of $5,796.00, payable to the order of A. T. Sugg, and forwarded the same to the Snow Hill Banking and Trust Company.

Pending negotiations and anticipating favorable action on the part of the Credit Corporation, plaintiff was allowed to overdraw his account in the Snow Hill Banking and Trust Company with the understanding that the same was to be taken care of out of the funds derived from his expected loan.

The Snow Hill Banking and Trust Company received the check above mentioned on 4 May, placed the same to the credit of the plaintiff, notified him that his "money had come," and gave him, at his request, a memorandum of the amount. Plaintiff thereupon proceeded to draw checks against his account to the amount of approximately $4,000.00. Nearly $1,000.00 worth of these checks had been paid when the Snow Hill Banking and Trust Company closed its doors and ceased to do business on 15 May, 1925, with a balance of $4,717.29 to the credit of plaintiff's account.

7—196

The check in question, purporting to be endorsed by the payee, was deposited for collection at the National Bank of Goldsboro by the Snow Hill Banking and Trust Company, duly endorsed by the latter. The National Bank of Goldsboro thereupon forwarded said check to its correspondent bank in Raleigh, Wachovia Bank and Trust Company, for collection, duly endorsing same with "all prior endorsements guaranteed." The Wachovia Bank and Trust Company received said check 5 May, 1925, and on the same day it was paid by the drawee bank, Raleigh Savings Bank and Trust Company, and duly charged against the account of the Credit Corporation.

About six months thereafter the plaintiff made demand upon the Credit Corporation for the amount of his loan, claiming that he had never endorsed the check in question nor authorized any one to endorse it for him. The Credit Corporation denied any liability, and contended that if, in fact, the plaintiff had not personally endorsed said check, the same had been endorsed for him by the cashier of the Snow Hill Banking and Trust Company, with authority to do so, or, if not, that such action had enured to plaintiff's benefit, who, with knowledge of the facts, had ratified the transaction by checking upon the deposit placed to his credit in the Snow Hill Banking and Trust Company.

A previous loan during the year 1924 had been handled in the same way without objection on the part of the plaintiff, and plaintiff testified that he instructed Mr. Blount to get the present loan "like he got the one for me the year before." Blount had endorsed the first check and placed the amount to plaintiff's credit just as in the instant case.

Upon motion of the Credit Corporation all the banks which handled said check were made parties defendant in this action; and it was admitted by the National Bank of Goldsboro that if the nongenuineness of the endorsement by the payee of said check were established, it would be liable to the Wachovia Bank and Trust Company, by reason of its endorsement; and in turn the Wachovia Bank and Trust Company admitted its liability to the Raleigh Savings Bank and Trust Company, and the payee bank admitted its liability to the Credit Corporation in like circumstances.

From a verdict and judgment in favor of plaintiff, the defendants appeal, assigning a number of errors, but relying chiefly upon the exception addressed to the refusal of the court to grant motion for judgment as in case of nonsuit.

*Rouse & Rouse and Ely J. Perry for plaintiff.*

*Cale K. Burgess for defendant, North Carolina Agricultural Credit Corporation.*

*Thomas H. Calvert for defendant, Raleigh Savings Bank and Trust Company.*

*Biggs & Broughton for defendant, Wachovia Bank and Trust Company.*

*Teague & Dees and F. E. Wallace for defendant, National Bank of Goldsboro.*

STACY, C. J., after stating the case: Conceding, without deciding, that the cashier of the Snow Hill Banking and Trust Company was not authorized by the payee to endorse the check in question, still we think the plaintiff must fail in his suit, if not upon the principle of ratification, then upon the doctrine of estoppel. The law will not permit him to take and to hold the fruits of what was done for him by the cashier of the bank and at the same time repudiate its consequences. *Bank v. Justice,* 157 N. C., 373, 72 S. E., 1016.

The substance of ratification is confirmation after conduct. 2 C. J., 467; *Parks v. Trust Co.,* 195 N. C., 453, 142 S. E., 473; *Waggoner v. Pub. Co.,* 190 N. C., 829, 130 S. E., 609. Here, the plaintiff, an intelligent business man, on being informed that the amount of his loan had been placed to his credit, proceeded to draw upon the deposit and to use it as his own. He must have known that the cashier had done whatever was necessary to place the funds to his credit. His conduct, under the circumstances, was tantamount to an adoption and confirmation of the endorsement made by the cashier who assumed to act as his agent at the time. *Starkweather v. Gravely,* 187 N. C., 526, 122 S. E., 297. He ought not to be heard now in repudiation of his previous conduct. *Lewis v. Nunn,* 180 N. C., 159, 104 S. E., 470.

"If certain acts have been performed or contracts made on behalf of another without his authority he has, when he obtains knowledge thereof, an election either to accept or repudiate such acts or contracts. If he accept them, his acceptance is a ratification of the previously unauthorized acts or contracts, and makes them as binding upon him from the time they were performed as if they had been authorized in the first place." *Gallup v. Liberty County,* 57 Tex. Civ. App., 175, 122 S. W., 291.

The doctrine of equitable estoppel is based on an application of the golden rule to the everyday affairs of men. It requires that one should do unto others as, in equity and good conscience, he would have them do unto him, if their positions were reversed. *Boddie v. Bond,* 154 N. C., 359, 70 S. E., 824; 10 R. C. L., 688 *et seq.* Its compulsion is one of fair play.

He who is silent when it is his duty to speak, will not be permitted by the law to speak when such silence has made it his duty thereafter to remain speechless. *Hardware Co. v. Lewis,* 173 N. C., 290, 92 S. E., 13.

Upon the record we think the defendants' motion for judgment as of nonsuit should have been allowed.

Reversed.