SILVER VALLEY MINING COMPANY v. NORTH CAROLINA
SMELTING COMPANY.

(Decided April 26, 1898).

### *Contract, Construction of—Question for Court—Partial New Trial.*

1. Where a contract is clear and certain in its terms and meaning, and there is no latent ambiguity necessitating proof of a custom to interpret its meaning, its construction is for the Court and not for the jury.

2. Where a contract between a mining company and a smelting company provided that the latter was to smelt ore for the former at $10 per ton and to pay to the former 95 per cent. of the silver produced, and by another clause it was provided that the 95 per cent. of silver "produced from the ore as aforesaid" should not be demanded until a certain time; and on the trial of an action for money due the mining company under the contract, the plaintiff mining company contended that the ores were to be paid for at their assay value according to a custom among smelters, and not on the basis of the silver produced by the smelting process; *Held*, that the contract was not ambiguous in its terms, and, therefore, should be construed by the Court, and it was error to submit to the jury the question whether the alleged custom existed among smelters.

3. Where, in the trial of an action in which several issues have been submitted and responded to, an erroneous instruction was given upon one issue entirely distinct and separable from the other issues and matters involved in the case, and a new trial can be had upon such issue alone without danger of complication, the new trial will be confined to such issue.

CIVIL ACTION tried before *Starbuck, J.*, and a jury at Spring Term, 1897, of DAVIDSON Superior Court. There was a verdict for the plaintiff, and from the judgment thereon defendant appealed. The facts are stated in the opinion.

*Messrs. Watson, Buxton & Watson* for plaintiff.
*Mr. E. E. Raper* for defendant (appellant).

Montgomery, J.: On the trial below his Honor instructed the jury that "the amount due to The Silver Valley Mining Company (the plaintiff in the action), by the Smelting Company (the defendant), is $309.96 unless you shall find from the evidence that there is a special custom among smelters that all the ores are to be paid for at assay value, and in case you should find there is such custom, then the amount due on said contract, if you believe the evidence, is $2,803.92."

. The correctness of this instruction depends upon whether or not the contract between the parties on its face is clear and certain in its terms and meaning. If it is clear and certain in its terms and meaning, and there is no latent ambiguity which necessitates the proving of a custom to interpret the meaning of the contract, then the instruction was wrong, and the defendant's exception thereto was well taken.

We will examine the contract. It, in substance, provided that the Mining Company was to furnish to the Smelting Company 450 tons, more or less, of Silver Valley ore; that the Smelting Company was to do the work of smelting the ore for $10 for each and every ton of ore so worked and smelted as working charges therefor, and pay to the Mining Company 95 per cent. of the silver contents of the product of the ore after deducting therefrom the smelting charges of ten dollars per ton.

In our opinion the construction of the contract was one of law, and should not have been submitted to the jury. The words "95 per cent. of the silver contents of the product of said ore," mean 95 per cent. of the ore reduced to its smelted condition. It cannot mean 95 per cent. of the silver contents of the mass of ore, as it was dug from the earth and before it was subjected to the smelting process. The defendants clearly did not

contract, nor did they intend to contract, upon an assay made of the ore containing the silver metal before it was smelted, but they contracted upon the basis of the product resulting from the smelting process. If the contract could be made clearer than it is on this point, it is made so by the fourth section of the contract between the parties. There, it is agreed between the parties that the Smelting Company shall not be called on to pay the Mining Company the 95 per cent. of silver "*produced from said ore as aforesaid*" . . . . , that is, the 95 per cent. is not to be paid upon an assay made upon the crude earth containing the metal, but upon the silver which is contained in the product of the smelting process.

His Honor's charge was based upon Ledoux & Co.'s assay, and that assay was made upon the ore before it had been subjected to the smelting process. It was provided in the contract that the 95 per cent. of the silver should be the silver produced under the smelting process, and not upon the silver contained in the ore by assay before it was smelted. There was error, therefore, in that instruction of the Judge.

That erroneous instruction, however, is entirely distinct and separable from the other issues and matters involved in the case, and there can be a new trial in respect thereto without danger of complication; and the defendants are entitled to nothing more at the hands of the Court.

There was evidence going to show that the deed of trust and confessed judgment in favor of the defendants, Glorieux and Woolsey, were executed and confessed for the purpose of hindering and delaying the plaintiff in the collection of its debts, and to fraudulently subject to execution sale the property of the

Smelting Company, that they might purchase the same for their own advantage and to the injury of the other creditors of the Smelting Company. The judgment below will be reformed so as to reopen the first issue, which was submitted on the trial.

New trial on first issue.