### I. J. GUY v. BADGER BULLARD AND THOMAS E. OWEN.

(Filed 8 October, 1919.)

**1. Mortgages—Contracts—Leases—Sawmills—Payment—Title.**

A contract in relation to a sawmill, called therein a lease, upon consideration that the bargainee shall cut or manufacture timber for the bargainor at the rate of one dollar per thousand feet, and when a specified sum has been accordingly paid it shall be treated as the purchase price of the mill, which shall then be the property of the bargainee, is to be considered in its effect as a mortgage, and upon his having complied therewith the title to the mill vests in him and the property becomes his as a purchaser.

**2. Same—Assignment—Waiver—Consent—Assignee's Rights.**

A contract made for the purchase of a sawmill upon consideration of the purchaser's sawing or manufacturing a certain number of feet of lumber for the seller, which does not in express terms or by fair intendment import reliance on the skill, character or personal qualities of the purchaser for performance, is assignable by him, and upon compliance by his assignee with its terms such assignee becomes the purchaser; and where the original seller has knowingly accepted payments from him his conduct therein will amount to a consent or waiver, were the contract of a nonassignable character.

**3. Mortgages—Contracts—Stipulations—Right to Repossess—Waiver.**

Where the mortgagee of a sawmill permits the mortgagor to continue to use the same, and afterwards the latter fully pays off the mortgage debt, he may not then avail himself of a provision in the instrument under which he may, at one time, have repossessed the mortgaged property.

APPEAL by plaintiff from *Guion, J.,* at May Term, 1919, of SAMPSON. This is an action to recover a sawmill outfit.

On 28 April, 1917, the plaintiff entered into a contract with the defendant Bullard in reference to said property, which contract was afterwards assigned to the defendant Owen.

The contract recites "that whereas the said I. J. Guy is the owner of a certain sawmill outfit located in the county of Cumberland, on the Kelly Melvin land, which he is desirous of selling to the said Badger Bullard and which the said Badger Bullard is desirous of purchasing"; it then provides that "A. J. Guy has by these presents leased to the said Badger Bullard, subject to purchase." It further provides that "said

I. J. Guy agrees to lease to said Badger Bullard all of the above described property."

The terms of payment set out in the contract were $1 per thousand feet for each and every thousand feet of lumber cut and manufactured by said sawmill outfit, and the contract concluded with the following provision:

"It is further agreed by and between the parties hereto that the said Badger Bullard shall comply with the terms and conditions above enumerated, then and in that event when the sum of $750 has been paid the same shall be treated as the purchase price of said property, and he shall be the absolute and legal owner of the same, and the same shall be treated as a complete and full settlement by and between the parties hereto, and the property above described and enumerated shall all belong to the said Badger Bullard."

The judgment rendered in the Superior Court sets out the contract in full, and concludes as follows:

"And it further appearing to the court that on 12 February, 1918, the said Badger Bullard sold and conveyed and duly transferred in writing said contract for said mill, and all his right and title thereto under the aforesaid contract to the defendant, Thomas E. Owen; and it further appearing to the court that prior to the sale of said property by Badger Bullard to Thomas E. Owen the said Badger Bullard paid, under the contract the sum of $151.18, being the $1 per thousand feet mentioned in the contract on 151,179 feet of lumber sawed by him with said sawmill, and that after the sale and assignment of his contract the defendant has paid to the plaintiff, I. J. Guy, a sum which, together with the money paid by Badger Bullard, makes the total sum paid to I. J. Guy, the plaintiff, under the contract for said sawmill outfit, $750, of which $306.71 is evidenced by uncollected checks drawn by the defendant to the order of the plaintiff and now held by plaintiff uncollected, but which are collectible from funds in the bank on which they are drawn.

"Upon the foregoing facts found by his Honor and admitted by the parties, his Honor being of the opinion that said contract was a sale and not a lease, and that the purchaser of Badger Bullard, being the defendant, Thomas E. Owen, had a right to pay the said sum of $750 and take the property, and the defendants having paid said sum to the plaintiff herein:

"It is considered, ordered and adjudged that the plaintiff has been fully paid for his mill under said contract, and that plaintiff take nothing by his suit, and that the defendants recover of the plaintiff and John D. Kerr, Sr., surety on his prosecution bond, the costs of this action, to be taxed by the clerk of this court."

The plaintiff excepted and appealed.

*Kerr & Herring and Fowler & Crumpler attorneys for plaintiff.
Butler & Herring attorneys for defendants.*

ALLEN, J.  A contract very much like the one before us was considered and construed in *Puffer v. Lucas,* 112 N. C., 377, and it was then held that contracts of this character are contracts of conditional sale, and that upon the payment of the purchase price the title to the property vests in the vendee.

This case has been affirmed several times, and notably in the case of *Hamilton v. Highlands,* 144 N. C., 280.

In this last case the plaintiff entered into a written contract with the defendant, which was called a lease, to hire to the use of the plaintiff for nineteen months a piano, etc., and to pay $50 cash and as rent $15 monthly, with further provision that if the defendant paid the installments of rent as they fell due he should have the right to purchase the piano for the total amount of the installments, in which case all sums paid as rent should be deducted from the purchase price, and the Court, after discussing the general effect of the contract, says: "It follows that the courts, in determining whether or not a contract is one of bailment or one of sale, with an attempt to retain a lien for the price, in effect a mortgage, do not consider what description the parties have given to it, but what is its essential character.  It was a mere subterfuge to call this transaction a lease, and the application of that term to it in the written agreement of the parties does not in law change its real meaning.  A contract like the one upon which this suit was brought has been held by a very large majority of the courts of this country to be, in substance, a conditional sale, although in the form of a lease (and so called) or of a bailment for use, with an option to purchase."

Numerous authorities are cited and discussed in support of the conclusion that the contract was one of conditional sale and that upon failure to pay the entire debt that the defendant was entitled to have the property sold and after applying enough of the proceeds to pay the balance of the debt to have any surplus paid to him.

The construction put upon the contract by the parties is entitled to consideration in determining its true meaning, but they cannot, by giving a name to it, change its legal effect.

These authorities are conclusive against the plaintiff's contention that the contract is one of lease and not of sale, nor can we sustain the position that the contract was not assignable.

The general rule is that any claim or demand can be transferred, and this contract does not come within any of the exceptions in *Petty v.*

*Rosseau,* 94 N. C., 363, nor does it in express terms or by fair intendment· import reliance on the character, skill or personal qualities of the vendee for its performance, a class of contracts which cannot be assigned (*R. R. v. R. R.,* 147 N. C., 376), but if nonassignable it appears here from the findings in the judgment that the plaintiff has consented to the assignment by accepting a part of the purchase money from the assignee and by cashing one of the checks after the judgment was rendered and depositing it as security for the costs on the appeal.

It is found as a fact in the judgment that Bullard paid to the plaintiff $151.18 before the contract was assigned to Owen; that the plaintiff had, when the judgment was rendered, checks given to him by Owen amounting to $306.71, the two amounts aggregating $457.89, which deducted from $750, the full amount of the purchase money, which has been paid to the plaintiff, leaves $292.11 paid by the defendant Owen after the assignment of the contract and accepted by the plaintiff.

He is not therefore in a position to say that the contract has not been legally assigned to the defendant.

Nor can the plaintiff avail himself of the provision in the contract giving him the right to repossess the property upon failure to operate the mill for a period of thirty days because, instead of exercising this privilege, he permitted the defendant to continue in the use and operation of the mill and accepted the balance of the purchase money.

We find no error in the judgment.

Affirmed.