CLARKSON, J., not sitting. *Page 576 
In 1844 Peter M. Brown purchased lots 239, 240, 241, and 242, in Square 37, Ward 2, of the town of Charlotte, and also lots 237, 238, 248, 249, 260, and 261, in Square 36 of said town. Brown also owned lots 271, 272, 282, and 283, in Block 37. Square 37 was situated on the east side of "A" Street, and Square 36 was situated on the west side of "A" Street. "A" Street was a public street of the town of Charlotte, extending from the corporate limits as defined at that time, in a westerly direction through the town. "A" Street was situated between College Street on the west and B Street or Brevard Street on the east, and was therefore the first street east of College Street and parallel therewith. At the time of the transaction referred to in the complaint "A" Street was a part of a wheat field and not actually located. The map of the town of Charlotte did not show the width of the street, but at the trial there was evidence tending to show that it was approximately 22 feet wide.
Fourth Street ran approximately east and west, parallel to Trade Street, being one block south of Trade Street, and intersected "A" Street. On 14 January, 1852, the Common Council of the town of Charlotte conveyed to the North Carolina Railroad "all that piece or parcel of land situated, lying and being in the town of Charlotte and known in the plan of said town by `A' Street from the point from which said railroad enters the town of Charlotte on the northeast and through to the depot lots of said railroad, and also so much of lots 748, 749 as described on the plot of said town as is necessary for the track of said road, it being understood and agreed on the part of said railroad company that the crossing of said `A' Street by the intersection of 3rd, 4th, 5th, 6th, 7th, 8th, 9th, and also Trade streets shall not be obstructed, etc."
Thereafter, on 8 April, 1852, at a meeting of the board of commissioners of the town of Charlotte, "it was resolved unanimously that `A' Street from the corporate limits of said town on the east to the depot lots, formerly the Asbury property, be appropriated to the use of the North Carolina Central Railroad Company, together with so much of any of the lots as now belong to said commissioners . . . as may be necessary for the construction of said railroad on condition that crossing said `A' Street by the intersections of 3rd, 4th, 5th, 6th, 7th, 8th, and 9th streets, shall not be obstructed so as to prevent or hinder free passage of all persons who may desire to pass over said `A' Street or railroad, etc."
On 22 January, 1852, Peter M. Brown, Thomas Trotter, Thomas J. Holton and other property owners owning property abutting said "A" Street executed and delivered to the North Carolina Railroad a deed *Page 577 
as follows, to wit: "Know all men by these presents, that we, who have hereunto subscribed our names and affixed our seals, all of the county of Mecklenburg and State of North Carolina, for and in consideration of the sum of one dollar to each one of us severally and respectively in hand, paid by the North Carolina Railroad Company, the receipt whereof is hereby acknowledged, and for the further consideration of the benefits and advantages which each one of us will severally and respectively derive from the construction of said railroad, have given, granted and surrendered, and by these presents do give, grant and surrender unto the said North Carolina Railroad Company the right, power and privilege by themselves their every tract or lot of land belonging to or owned by and held by us severally and respectively in the town of Charlotte, in said county, adjoining the next street lying to the east of College Street and running parallel therewith through and over which said lots and lands they may desire to construct their contemplated railroad, and to lay out and construct their said railroad on said lots and lands at their will and pleasure, and to use same so long as said company shall have the same use for the purposes of a railroad, and the said railroad shall continue, or the said company may have a corporate existence, and should said road cease to exist or said corporation dissolve and discontinue their operations, then the right, power and privilege hereby granted shall cease and discontinue and the lands hereby granted shall revert.
"It is further expressly understood that so much of said lots and lands on their eastern limits is hereby granted as the said company may deem necessary, together with said street east to construct the necessary track of their said railroad, with its appropriate and necessary excavations, embankments and culverts.
"Witness our hands and seals this 22 January, 1852."
Thereafter, on 3 April, 1852, Peter M. Brown conveyed to North Carolina Railroad Company in fee lots 260 and 261, in Square 36, and lots 271, 282, and 283, in Square 37, said lots being further designated as follows: Bounded by Third Street, B Street, "A" Street, and the lots of the said P. M. Brown.
Thereafter, a partition proceeding was instituted by the heirs at law of P. M. Brown for the sale of lots 239, 240, 241, and 242, which is the property now in controversy, and on 29 September, 1876, deed was made by F. S. DeWolf, commissioner, to John L. Brown "conveying lots 240, 241, 242, and a fraction of lot 239, in Square 37, fronting 357 feet on Fourth Street, and bounded by B Street on the east and the North Carolina Railroad on the west.
Thereafter the title to said land became vested in L. W. Crawford, who conveyed to the plaintiffs J. H. and W. R. Wearn, on 16 January, *Page 578 
1895, by the following description: "All those certain lots or parcels of land in the city of Charlotte and known as lots numbers 242, 241, 240, and all of lot 239 in Square 37, except so much of lot 239 as is owned by the North Carolina Railroad, it being the intention to convey the three lots and fraction of another lot mentioned in the deed made by John L. Brown to the said Christiana E. Brown, dated 3 October, 1876, and recorded in the register's office in Mecklenburg County in Book 15, page 233."
The plaintiffs under their said deed entered into the possession of said land and have erected structures thereon.
The plaintiffs allege: "That recently a controversy has arisen between the plaintiffs and the defendants as to the right of way which said defendants acquired under and by virtue of the right of way deed from Peter M. Brown and others hereinbefore referred to, the plaintiffs claiming and contending that the defendants' right of way is and was confined by the terms of said deed to the location and maintenance of a single track in, along and over `A' Street, and the defendants claiming and contending that they acquired by virtue of said right of way deed a right of way of the width of 100 feet on each side of the center line of its railroad as originally located on `A' Street, between Third and Fourth streets in said city."
This suit, therefore, was brought by plaintiffs to remove a cloud from their said title arising from the claim of defendants of a right of way over said lots 239 and 240 abutting "A" Street. The defendants offered evidence tending to show that its track was originally laid east of "A" Street over and along lot 239 claimed by the plaintiffs, and that said main line track is now 18.76 feet east of "A" Street and upon said lot 239, and introduced in support of said claim the testimony of old men to the effect that the main line track was now in the same location as it was originally laid in 1853 or 1854.
The issues and answers of the jury thereto were as follows: (1) Are the plaintiffs the owners in fee simple of lots Nos. 240, 241, 242, and 239, Square 37, of the city of Charlotte, and bounded by Brevard Street on the east and the North Carolina railroad on the west? A. Yes. (2) If so, have the defendants any right or easement over said lots or any of them? A. Yes. (3) If so, how far east of the easterly limits of "A" Street does such right or easement extend over and upon the said lots or any part of them? A. 39 feet.
The defendants objected to the issues so submitted to the jury, and tendered the following issues: (1) Were any of the tracks or necessary fills connected therewith originally located on the lots Nos. 239, 240, 241, and 242, in Square 37, of Charlotte at the southeast corner of intersection of south "A" Street and east Fourth Street? (2) If so, *Page 579 
where was the center line of main line track as originally located at said points? (3) Where was the center line of main line track of said land located on 3 October, 1876?
Judgment was entered upon the verdict as rendered by the jury, and defendants appealed.
The question presented by the record is whether or not the defendants have an easement or right of way over the lands of plaintiffs; and, if so, the extent of such easement or right of way?
An easement or right of way, under the law, is acquired by three methods, to wit: (1) Purchase or grant; (2) condemnation; (3) statutory presumption. Barker v. R. R., 137 N.C. 214; Griffith v. R. R., ante, 84.
The defendants claim an easement by virtue of grant from the town of Charlotte and from Peter M. Brown, plaintiffs' predecessor in title, and also by virtue of section 29 of charter of the North Carolina Railroad providing "that in the absence of any contract or contracts with said company in relation to lands through which the said road or its branches may pass signed by the owner thereof, . . . it shall be presumed that the land upon which the road or any of its branches may be constructed, together with a space of 100 feet on each side of the center of said road has been granted to the said company, by the owner or owners thereof, . . . unless the person or persons owning the said land . . . shall apply for an assessment of the value of said land . . . within two years next after that part of said road which may be on said land was finished."
The law of North Carolina as declared in many decisions is to the effect that if a railroad company enters upon land under a deed or grant from the owner which purports to convey an unrestricted right of way and no definite quantity or width of land is specified, and thereafter constructs its road thereon, then it is presumed that the owner has granted to the company the width designated in the charter or in the general statute. This statutory presumption therefore applies: (1) In the absence of a contract between the parties; (2) where the contract purports to convey an unrestricted right of way and no definite quantity or width is specified; (3) only against owner across or over whose land the track is constructed. R. R. v. Olive,142 N.C. 257; Earnhardt v. R. R., 157 N.C. 358; Hendrix v. R. R.,162 N.C. 9; R. R. v. Bunting, 168 N.C. 580; Tighe v. R. R.,176 N.C. 239. It *Page 580 
has also been determined that a railroad company cannot claim under a deed and also under a statutory presumption. Hickory v. R. R., 137 N.C. 189.
Applying these principles of law, it is obvious that if the North Carolina Railroad actually built and constructed its tracks in "A" Street that it can claim no easement by virtue of presumption in the lands of the plaintiffs because the presumption applies only against the owner across whose land the track is built.
The vital and determinative proposition, therefore, is to determine whether or not the railroad was originally constructed in "A" Street or east of "A" Street across the Brown land.
The plaintiffs assert that the track was so constructed in "A" Street, and the defendants assert that the track was constructed 18.76 feet east of "A" Street and on lot 239.
In order to arrive at the merit of this proposition it will not be amiss to consider the construction placed by the parties upon the contract before the controversy arose. Williston on Contracts, vol. 2, sec. 623, states: "The interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court, and to this end not only the acts, but the declarations of the parties may be considered. But if the meaning of the contract is plain, the acts of the parties cannot prove a construction contrary to the plain meaning. Such conduct of the parties, however, may be evidence of a subsequent modification of their contract." The principle thus announced is reinforced by the following language fromLewis v. Nunn, 180 N.C. 164: "There can be no doubt that in determining the meaning of an indefinite or ambiguous contract, the construction placed upon the contract by the parties themselves is to be considered by the court. . . . In fact, where, from the terms of the contract or the language employed, a question of doubtful construction arises, and it appears that the parties themselves have practically interpreted their contract, the courts will generally follow that practical construction. It is to be assumed that parties to a contract know best what was meant by its terms, and are the least liable to be mistaken as to its intention." Guy v.Bullard, 178 N.C. 228; Plumbing Co. v. Hall, 136 N.C. 530; 13 C. J., 546; 6 R. C. L., 852.
So that, we are led to inquire as to whether or not the railroad company contended in the beginning that it had a right of way of 100 feet over the land of Brown, plaintiffs' predecessor in title. The plaintiffs assert that the defendant never contended it had any easement or right of way east of "A" Street until recently, and that the defendant recognized that its right of way was confined to "A" Street. In support of this contention the plaintiffs refer to the fact that in April, 1852, the North *Page 581 
Carolina Railroad Company purchased from Brown four lots in the same square with lot 239, now in controversy, and that said deed described the land therein conveyed as follows: "Bounded by Third Street, B Street, and `A' Street," thereby recognizing that Brown's land extended to "A" Street for the reason that this deed was some months subsequent to the alleged right-of-way deed from Brown to the defendants. Further reference is made to the fact that the defendant purchased from one Trotter, who signed the alleged right-of-way deed with Brown, a strip of land described as follows: "Beginning at the intersection of Sixth Street with `A' Street on the southeast side of `A' Street; thence along the line of Sixth Street 42 feet to a stake; thence southwest 42 feet from `A' Street and parallel with the same to a stake in the lots owned by said company; thence at right angles with the said line 42 feet to `A' Street; thence to the beginning, being 42 feet off of the end of lots Nos. 384 and 385 in Square 55 in the plan of the town of Charlotte, and extending from Sixth Street along `A' Street the whole width of said lots, and 42 feet wide." This deed was made in 1855 after the Brown and Trotter deed above referred to. Plaintiffs assert that the very fact that the defendants were purchasing 42 feet of land on "A" Street from Trotter, if they already had a right of way from Trotter on "A" Street, would be unreasonable, and that this fact shows that at that time the defendants did not interpret the Brown and Trotter deed as conferring any easement or right of way east of "A" Street. In further support of this contention, the record discloses that on 13 May, 1880, the North Carolina Railroad and the Richmond Danville Railroad, its lessee, instituted a suit in Mecklenburg County against the Carolina Central Railroad and others. In the complaint filed by the North Carolina Railroad in that action are the following allegations:
"That the North Carolina Railway Company was and is the exclusive owner in fee of the right of way extending 100 feet on each side of its track, measuring from the center of all the lands lying between the point of intersection and the tracks of the said Carolina Central Railway Company and the North Carolina Railway Company and the old boundary line of the town of Charlotte at the foot of `A' Street, a distance of about 1,200 feet, and also is the owner in fee of the exclusive right of way along `A'Street in said city from the said old boundary line to Second Street whereits depot is located. The exclusive right of way of `A' Street in the cityof Charlotte was obtained by grant from the town of Charlotte and the rightof way over the residue of its line was obtained by grants from the ownersin fee of the lands over which its line is located. *Page 582 
"That the North Carolina Railway Company and its lessee or coplaintiff have been using and occupying as a portion of the main road a track over this said right of way continuously since the year 1853, and have also used and occupied one side track on each side of the main track over a portion thereof for said period.
"That in order to bring about prompt and efficient transportation of said freight and passage to provide for the constantly increasing volume of business, it has become necessary, as plaintiff believes, to use the entireright of way along `A' Street to the old boundary line and to constructadditional tracks thereon to the junction of the Atlanta and CharlotteAirline Railway which said tracks will require the entire right of wayalong said street for its construction and the plaintiffs are, accordingly,about to commence the construction of such additional track along `A'Street.
"That the defendants, in violation of the rights of the plaintiffs and in defiance of law, and without having had the said right of way condemned or without any other colorable right so to do, have entered, with a large body of men thereon and, although forbidden by plaintiff so to do, are proceeding to take up and remove the earth along the plaintiffs' said rightof way on `A' Street and beyond, and are threatening to occupy plaintiffs' entire right of way by constructing a track or tracks thereon for its own use for the entire distance from the point of intersection of plaintiffs' and defendants' road to the defendants' said depot on Trade Street.
"That unless defendants are restrained by an order of this honorable court from thus interfering with plaintiffs in the construction of their said tracks and the use and occupation of their said right of way, therewill not be remaining a sufficient space over the said right of way for theconstruction of the tracks now necessary for the plaintiffs' use."
These allegations, by a fair interpretation, practically compel the conclusion that the defendant claimed "A" Street as a right of way, and that they were resisting the use of "A" Street as a right of way by the Carolina Central Railroad Company for the reason that the said "A" Street was not wide enough to accommodate both railroad tracks as set out in paragraph 23 of their complaint. Therefore, if the right of way of the defendant was in "A" Street and its tracks laid therein, then there would be no presumption of any easement or right of way in the Brown land for the obvious reason that the track was not laid over or across his land.
It must also be observed that the Brown and Trotter deed does not, upon its face, purport to be a full right-of-way deed. The restrictive clause in the deed is as follows: "It is further expressly understood that so much ofsaid lots and lands on their eastern limits is hereby granted *Page 583 as the said company may deem necessary, together with said street east (`A'Street), to construct the necessary track of their said railroad with itsappropriate and necessary excavations, embankments and culverts."
It would therefore appear from this language that the land granted in the Brown deed was for only so much of the land, which added to the right of way in the "street east" (or "A" Street) as was necessary for the construction of a track, excavations, embankments and culverts. This restrictive clause is in the nature of a particular description, the function of which is to abridge and limit, but not to enlarge the general description. Carter v. White, 101 N.C. 30; Cox v. McGowan, 116 N.C. 131;Potter v. Bonner, 174 N.C. 20.
The necessary conclusion, therefore, is that the deed in controversy is not and was not intended to be a full right of way deed, but rather a deed for a restricted area to be used with other land. So that, it would be immaterial as to whether the track of defendant was actually laid in "A" Street or upon the Brown land, for the controlling reason that when the defendant accepted the deed restricting and limiting the amount of land to be used for railroad purposes, it cannot be permitted to extend its user or easement beyond that portion of said land actually used and occupied. This construction of the deed in question and the effect of the restrictive clause referred to is established in the decision of Tighe v. R. R.,176 N.C. p. 239. In the Tighe case there was a restrictive clause and evidence to show that only a portion of the land was used and occupied by the railroad company under said restrictive clause, and the finding of the jury as to the extent of the easement and judgment thereon was upheld.
The record in this case and the principles of law involved lead unerringly to the conclusion that, whether the tracks of defendants were originally laid in "A" Street or not, neither the presumption contained in defendants' charter nor in the statute applies in this case. Therefore, the rights of the defendants are confined to the Brown and Trotter deed referred to. As this deed grants only a limited or restricted right of way, the defendants are confined to that portion of the land used and occupied by them.
The conclusion of the whole matter resolves itself into four clear cut propositions, as follows: (1) All claim or right to an easement east of East Street over the lands of plaintiffs flows from (a) a statutory presumption, or (b) the deed from Brown and others to the defendants' predecessor in title. (2) If the road was contracted and built in "A" Street, the statutory presumption cannot apply for the reasons given herein. (3) If the road was actually constructed east of "A" Street, the statutory presumption cannot apply because the Brown deed, by its plain terms, is not, and does not purport to be a full or unrestricted *Page 584 
right-of-way deed. (4) As the Brown deed conveys only a portion of a right of way or a restricted easement, the defendants are limited to the easement granted, and the jury has found that the extent of the easement east of "A" Street is 39 feet.
There are serious exceptions in the record, but these exceptions in the main grow out of evidence and principles of law relating to contentions as to whether the road was constructed in "A" Street or east of "A" Street. Under the construction of the deed and the interpretation of the principles of law applicable to the merits of the controversy given by us, these exceptions become immaterial.
The importance to the parties of the questions involved has required a diligent and careful examination of the principles of law involved in the case. In this investigation the accurate and comprehensive briefs filed by counsel have been of great service.
Upon a consideration of the whole record, we are constrained to hold that the cause has been properly tried, and that a just judgment has been rendered.
No error.
CLARKSON, J., not sitting.