J. R. COLE AND W. S. FORBES, PARTNERS, TRADING AS GLENN COMMISSION COMPANY, v. THE INDUSTRIAL FIBRE COMPANY, INC., AND INDUSTRIAL RAYON CORPORATION.

(Filed 25 March, 1931.)

1. **Contracts B a—Contract will ordinarily be given that interpretation given to it by parties prior to differences between them.**

   The parties to a contract will be presumed to know its intent and meaning better than strangers thereto, and where they have practically interpreted the contract while living under it in its peaceful performance the courts will ordinarily give it that construction which they themselves have given it before differences arose thereunder.

2. **Same—In construing a contract words will be construed with reference to subject-matter and objective of parties.**

   In construing a contract words employed therein will be construed with reference to the subject-matter of the contract, the context, and the object sought to be accomplished by the parties, and this rule is in consonance with the rule forbidding parol evidence varying, adding to, or contradicting the terms of a written instrument.

**3. Brokers D a—In this case held: contract was for commission on completed sales where delivery was made and not upon acceptance of orders.**

Where a contract provides for the payment by a manufacturing corporation of commissions to a selling agent upon "net sales" in a given territory, the manufacturer reserving the right of cancellation of orders obtained by the selling agent, and the parties, while peacefully living thereunder in its performance, have practically interpreted the words "net sales" to mean sales completed by delivery of goods: *Held*, the selling agent is entitled to commissions only on orders completed by actual delivery, and a subsequent supplemental agreement relating to "acceptance of orders" will be construed with reference to its object of relating orders to capacity output, and not to the payment of commissions, and it does not vary the original terms in regard to commissions, the original terms in this regard being expressly preserved in the supplemental agreement, and the submission of the contract to the jury in this case is held for error.

APPEALS by plaintiffs and defendants from *Sink, Special Judge*, at February Special Term, 1930, of MECKLENBURG.

Civil action to recover (1) commissions alleged to be due under exclusive representative's sales agreement, and (2) damages for the breach of said agreement.

The first disputed cause of action is for commissions on orders accepted and booked, but later canceled or upon which deliveries were never made.

By the terms of the contract between the parties, dated 30 June, 1926, the plaintiffs were "appointed exclusive representatives" for the sale of products of the Industrial Fibre Company (and its successor, Industrial Rayon Corporation), manufacturers of rayon yarns, in six Southern States: Virginia, North Carolina, South Carolina, Georgia, Alabama and Tennessee, for a period of eighteen months with the privilege of renewal from year to year. The right to refuse any or all orders was expressly reserved in the contract, with the proviso that in case orders exceeded capacity of output, proportionate shipments would be allotted to said territory, and equal coöperation given at all times, "in sales and deliveries," in the same manner and under the same terms as proportional allotments are made to other territories and other agents.

"In consideration of the above and as compensation for their services, the Industrial Fibre Company will pay to the Glenn Commission Company a commission on all net sales accepted by the Industrial Fibre Company, Inc., which come within the territory mentioned, at the rate of 1½%."

This agreement was modified by supplement 23 February, 1927, which cut down the territory of the plaintiffs to the States of Virginia, North Carolina and Tennessee.

In consideration of this reduction of territory, the Industrial Fibre Company agreed to change the rate of commission of one and one-half per cent (1½%) "on such sales," allowed the plaintiffs under the original contract, to "a new rate of commission, as follows: On orders which we accept priced under $1.00 per pound 0½%. On orders which we accept priced from $1.00 to $1.14 per pound 1%. On orders which we accept at $1.15 per pound or more 2%. It is understood between the parties that all other terms in the original contract dated 30 June, 1926, by and between the parties, excepting those above mentioned, shall remain the same in full force and effect until the termination of said agreement."

The contract was terminated on 22 August, 1927. Its unexpired term, therefore, was a little more than four months. The second cause of action is to recover damages for its alleged breach.

In the first cause of action, plaintiffs sue for commissions on orders sent in and accepted by the defendants during the amicable period of the agreement, but which were canceled before they were or could be filled; also for commissions on certain shipments made to the Hillcrest Silk Mills, with plants in New Jersey and North Carolina, because said shipments were made into plaintiffs' territory, though they had nothing to do with securing orders for said shipments, which came through a New York agency.

Plaintiffs concede that commissions under the contract "on all net sales" were paid monthly—accompanied by itemized statements—and that they never made any claim for commissions on cancellations prior to bringing the present suit. There is no contest over commissions for sales completed and deliveries actually made.

The trial court held that the original agreement was ambiguous and submitted to the jury the question whether the parties intended thereby to contract for commissions on cancellations; and held further, as a matter of law, that commissions on cancellations were recoverable under the supplemental agreement, from and after its execution, 23 February, 1927.

The jury returned the following verdict:

"1. What commissions, if any, is the plaintiff entitled to recover upon orders which the defendants accepted and booked prior to 22 August, 1927, but upon which deliveries were not made or completed? Answer: $2,800.

"2. What commissions, if any, is the plaintiff entitled to recover upon sales made to the Hillcrest Silk Mills prior to 22 August, 1927? Answer: $5,606.04.

"3. Did the defendant Industrial Fibre Company breach its contract with the plaintiff as alleged in the complaint? Answer: Yes.

"4. If so, what damages, if any, is the plaintiff entitled to recover of the defendant by reason of such breach? Answer: $14,000."

On the coming in of the verdict, the plaintiffs tendered judgment, including therein interest on the amounts awarded. No interest was allowed on the sums awarded by the jury prior to the rendition of the judgment, from which ruling the plaintiffs appeal.

Judgment on the verdict for plaintiffs, from which the defendants appeal, assigning numerous errors.

*Cansler & Cansler and John M. Robinson for plaintiffs.*
*MacLean & Rodman, Beckerman & Felsman and P. C. Whitlock for defendants.*

STACY, C. J., after stating the case: It was error to submit the original contract to the jury to ascertain the intention of the parties, and to hold that the supplemental agreement, from and after its execution, 23 February, 1927, covered commissions on cancellations. *Mining Co. v. Smelting Co.,* 122 N. C., 542, 29 S. E., 940. The parties themselves, during the peaceful life of the contract, construed it otherwise and so applied it in the practical operation of their business.

The general rule is, that where, from the language employed in a contract, a question of doubtful meaning arises, and it appears that the parties themselves have interpreted their contract, practically or otherwise, the courts will ordinarily follow such interpretation, for it is to be presumed that the parties to a contract know best what was meant by its terms, and are least liable to be mistaken as to its purpose and intent. *S. v. Bank,* 193 N. C., 524, 137 S. E., 593; *Wearn v. R. R.,* 191 N. C., 575, 132 S. E., 576; *Lewis v. Nunn,* 180 N. C., 159, 104 S. E., 470; *Guy v. Bullard,* 178 N. C., 228, 100 S. E., 328; *Plumbing Co. v. Hall,* 136 N. C., 530, 48 S. E., 810; 2 Williston on Contracts, sec. 623; 13 C. J., 546. "Parties are far less liable to have been mistaken as to the meaning of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it of what was intended by its provisions." 6 R. C. L., 853.

It is often said that "the construction of a contract, when in writing or agreed upon, is a matter of law for the courts." *Barkley v. Realty Co.,* 170 N. C., 481, 87 S. E., 219. This is true, and in "those written contracts which are sufficiently ambiguous or complex to require construction, the general rule is that the intention of the parties is the polar star. . . . If the words employed are capable of more than

one meaning, the meaning to be given is that which it is apparent the parties intended them to have." *King v. Davis,* 190 N. C., 737, 130 S. E., 707. Frequently, this intention can best be gathered from the practical construction of the contract which the parties themselves have adopted and observed during the period of harmonious operation. *Mitchell v. Heckstall,* 194 N. C., 269, 139 S. E., 438.

Speaking to the subject in *Manhattan Life Ins. Co. v. Wright,* 126 Fed., 82, *Sanborn, Circuit Judge,* delivering the opinion of the Court, says: "The practical interpretation given to their contracts by the parties to them while they are engaged in their performance, and before any controversy has arisen concerning them, is one of the best indications of their true intent, and courts that adopt and enforce such construction are not likely to commit serious error," citing a number of authorities for the position.

To like effect is the holding in *Hull Co. v. Westerfield,* 107 Neb., 705, 186 N. W., 992, 29 A. L. R., 105 (as expressed in the fourth headnote): "The interpretation or construction given contracts by the parties to them, while engaged in their performance before any controversy has arisen, is one of the best indications of their true intent and meaning, and the courts should ordinarily enforce such construction." See, also, *Hammett Oil Co. v. Gypsy Oil Co.,* 95 Okla., 235, 218 Pac., 501, 34 A. L. R., 275.

The reason for following the practical interpretation of the parties is stated by *Mr. Justice Nelson* in *Chicago v. Sheldon,* 9 Wall., 50, as follows: "In cases where the language used by the parties to the contract is indefinite or ambiguous and, hence, of doubtful construction, the practical interpretation by the parties themselves is entitled to great, if not controlling, influence. The interest of each, generally, leads him to a construction most favorable to himself, and when the difference has become serious, and beyond amicable adjustment, it can be settled only by the arbitrament of the law. But, in an executory contract, and where its execution necessarily involves a practical construction, if the minds of both parties concur, there can be no great danger in the adoption of it by the court as the true one." Quoted with approval in *Topliff v. Topliff,* 122 U. S., 121.

Finally, we may safely say that in the construction of contracts, which presents some of the most difficult problems known to the law, no court can go far wrong by adopting the *ante litem motam* practical interpretation of the parties, for they are presumed to know best what was meant by the terms used in their engagements. Anson on Contract, p. 436.

Nor is the practical construction placed upon the contract by the parties in the instant case at variance with the terms of the instrument

itself. It is provided in the original agreement that commissions will be paid "on all net sales accepted by the Industrial Fibre Company," which provision is expressly brought forward and made a part of the supplemental agreement. The dual purpose of this supplemental agreement was to reduce the plaintiffs' territory and to substitute "a new rate of commission," but the basis of the rate, i. e., "on all net sales," was left unchanged. The parties understood, and so interpreted their agreement to mean, that commissions would be paid on all "net sales," that is, sales completed by deliveries and made on orders accepted by the defendants for the territory mentioned in the contract. The term "net sales," then, as intended by the parties, according to their own construction of the contract, was used in the sense of sales completed by deliveries out of orders accepted by the defendants for the territory in question. This interpretation not only accords with the understanding of the parties, but it also fits in with the ordinary meaning of the language employed, when viewed in the light of what the parties were undertaking to accomplish by their agreement.

The terms "accepted by the Industrial Fibre Company," used in the original agreement, and "orders which we accept," employed in the supplemental agreement, were intended to protect the defendants from excessive orders, and to authorize a proportional allotment of "sales and deliveries" to the different territories and different agents according to the ability of the defendants, with their limited capacity output, to fill said orders. This is the meaning which the parties themselves placed upon the terms of the contract.

The law is, that "an agreement ought to receive that construction which will best effectuate the intention of the parties to be collected from the whole of the agreement," and that "greater regard is to be had to the clear intention of the parties than to any particular words which they may have used in the expression of their intent." Anson on Contract, p. 425; Wigmore on Evidence, sec. 2460; *Porter v. Construction Co.*, 195 N. C., 328, 142 S. E., 27. "A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used," says *Mr. Justice Holmes* in *Towne v. Eisner*, 245 U. S., 418. General or particular meaning-content, therefore, may be imputed to words and phrases according to the circumstances of their use and the objects sought to be accomplished by the parties. This is not at variance with the rule that the written word abides, and that the terms of a contract put in writing may not be varied or contradicted by parol, but is entirely consonant therewith. The one belongs to the field of evidence, the other to the construction of contracts. *Spragins v. White*, 108 N. C., 449, 13 S. E., 171.

The court's erroneous construction of the contract necessarily affected the measure of damages for its breach, hence a new trial must be awarded on the second cause of action as well as on the first.

This disposition of the defendants' appeal renders the question of interest, presented by plaintiffs' appeal, and the liability of the defendants for commissions on sales made to Hillcrest Silk Mills, unnecessary to be decided on the present record.

New trial.