GURNEY P. HOOD, COMMISSIONER OF BANKS, ET AL., v. E. A. DAVIDSON AND FIDELITY AND CASUALTY COMPANY OF NEW YORK.

(Filed 21 November, 1934.)

**1. Principal and Surety B e—**

Ambiguous language in a surety bond will be construed most strongly against the surety who chose the words to suit itself.

**2. Contracts B a—**

In determining the meaning of an indefinite contract, the construction placed upon the contract by the parties themselves will usually be adopted by the Court.

**3. Principal and Surety B d—Bank official's bond and renewal thereof held to constitute but one contract under facts of this case.**

Defendant surety executed a bond for a bank officer which provided that it should continue in force until terminated or canceled by written notice to the employer stating when such cancellation should be effective, which notice should be given at least thirty days prior to such cancellation. Three years thereafter the same surety executed a bond on the same officer to the same employer, which bond stated that it was issued as a continuation of the old bond, that the old bond and the renewal should be deemed one bond, and that the surety's aggregate liability should not exceed the greatest amount for which the surety was liable under one of the bonds: *Held,* the two papers, executed for a common intent, will be construed together, and in view of the language of the bonds and the construction placed thereon by the parties, together with the pertinent principles of law, the two bonds constituted but one contract of indemnity.

**4. Same—Claim against surety held filed within time prescribed under bank official's bond and renewal thereof which constituted one bond.**

The bond of a bank official provided, among other conditions relating to notice, filing claim and suit, that no claim should be filed thereunder after fifteen months from the expiration or cancellation of the bond. Thereafter a renewal bond was executed by the surety, which renewal bond and original bond constituted but one contract, and there was no

evidence that the old bond had been canceled in accordance with its terms. Loss covered by the contract was sustained during the period covered by the original bond, but was not discovered until more than fifteen months after the execution of the renewal bond: *Held*, the right to file claim and sue on the bond to recover such loss was not precluded by the limitation in the original bond, since the original bond had not expired and had not been canceled in accordance with its terms, and the provisions in the second bond requiring notice in thirty days after discovery of loss, itemized proof of loss within three months after such discovery, and suit within twelve months from such discovery, amended and modified like provisions in the first bond, and governed the rights of the parties.

5. **Appeal and Error J c—Findings of fact by referee, approved by trial court, and supported by evidence, are conclusive on appeal.**

In this action against the surety on the bond of a bank officer, the referee found that notice of loss under the contract and an itemized statement thereof was given the surety as required by the contract, which findings were supported by evidence and approved by the trial court upon appeal: *Held*, the surety's contentions that notice and an itemized statement were not given as required by the contract cannot be sustained.

6. **Appeal and Error B b—**

Where an aspect of the law involved in a case is not presented in the trial court it will not be considered in determining the rights of the parties upon appeal to the Supreme Court.

CIVIL ACTION, before *Small, J.,* at July Special Term, 1934, of CHEROKEE.

The record discloses that the Cherokee Bank was duly chartered as a North Carolina bank in the year 1920, and that upon organization of the bank E. A. Davidson became president thereof until the bank was closed on account of insolvency on 3 October, 1931.

On 21 May, 1926, the Fidelity and Casualty Company of New York executed and delivered to the Cherokee Bank Fidelity Bond No. 1096651, indemnifying said bank in the sum of $10,000 against loss through the fraud, dishonesty, embezzlement, or wrongful abstraction of E. A. Davidson. Certain pertinent clauses of this bond are noted, as follows: (a) "The term of this bond begins on 21 May, 1926, . . . and shall continue in force until terminated or canceled as hereinbefore provided." (b) "Without prejudice . . . the company may cancel this bond at any time by a written notice, stating when the cancellation takes effect, served on the employer or sent by registered letter to the employer . . . at least thirty days prior to the date that the cancellation takes effect," etc. (c) "Upon discovery of employer of any dishonesty . . . the employer shall give immediate written notice thereof to the company. . . . Affirmative proof of loss under oath, together with full particulars of such loss, shall be filed with the company at its home office within three months after such discovery. . . . The right to make

claim hereunder shall cease at the end of fifteen months after the termination, expiration, or cancellation of this bond."

Thereafter, on 21 May, 1929, the defendant Casualty Company "executed and delivered to said bank another Fidelity bond, known as No. 1267548, indemnifying said bank against the same acts of E. A. Davidson as specified in the former bond . . . while in any position in the continuous employ of the employer, after twelve o'clock noon of 21 May, 1929, and before the employer shall become aware of any default on the part of the employee, and discovered before the expiration of three years from the termination of such employment or cancellation of this bond, whichever may first happen." This second bond, as aforesaid, contains certain pertinent clauses, to wit: (a) "The employer shall, within a reasonable time and at all events not later than thirty days after discovery of loss hereunder, notify the surety thereof," etc. (b) "Claim for loss hereunder shall be itemized with full particulars, including the amount and date of each item, subscribed and sworn to by the employer, and presented to the surety within three months after the discovery of such loss." (c) "Any suit or action to recover against the surety . . . shall be brought before the expiration of twelve months from the discovery of such loss," etc.

To the foregoing bond was attached a rider constituting a part of said bond, as follows: "This individual bond is issued as a continuation of the individual bond . . . numbered 1096651 and dated 21 May, 1926.

"It is hereby understood and agreed that the continuance of the said old bond in this manner shall not bar a recovery under the said old bond for loss in all other respects covered thereunder, and the said old bond and this renewal bond shall be deemed one bond.

"It is further understood and agreed that the company's liability (1) for any loss occurring within the term of the old bond shall not exceed the limit of the company's liability specified under the said old bond; (2) for any loss occurring within the terms of this renewal bond shall not exceed the limit of the company's liability specified in this renewal bond, . . . the company's aggregate liability under both bonds for all loss or losses shall not exceed the greatest amount for which the company is liable under one of the said bonds."

On 3 October, 1931, the Bank of Cherokee was closed by proper authority. On 6 November, 1931, the liquidating agent of the bank notified the defendant surety that there was an apparent shortage in the books of the Cherokee Bank "which the auditors have just begun to discover," and further notified the defendant surety that it held surety bonds issued by it on behalf of E. A. Davidson and Charles William Carringer, who were active officers of the bank. This letter was re-

ceived by the defendant surety on 9 November, 1931.  On 19 December, 1931, the plaintiff filed a proof of loss with the surety, stating that E. A. Davidson, president of the bank, had violated various banking statutes in abstracting and misapplying the funds of the bank, showing a direct and indirect liability of Davidson amounting to $24,910.05.  In addition, certain other notes were listed, bringing the total amount of proof of loss to the sum of $36,624.73.  The proof of loss declared: "The Fidelity and Casualty Company of New York is further notified that an accurate and complete examination of the affairs of said Cherokee Bank has not yet been consummated and claimants expressly reserve the right to include in their claim on said bonds other and additional items that may in the future come to light.  Notice is further given that the grounds set out above on which liability may be predicated shall not be exclusive, but the right is expressly reserved to include other and additional grounds of liability."

The present suits were instituted on 23 February, 1932, and on 19 September, 1932.  The suits were consolidated.  A complaint and amended complaint were filed and answer and amended answer filed by the surety company.  The case on appeal shows the following: "The defendant Fidelity and Casualty Company of New York denied liability on the ground that there had been no breach of the bond by Davidson, or losses to the bank, and on the further ground that the Cherokee Bank and the plaintiff Commissioner of Banks had failed to comply with the terms of the bond in regard to notifying it of the losses claimed within the time required by the bond, and had also failed to file proof of loss in accordance with the terms of the bond."

Thereafter, Hon. G. L. Jones was appointed referee.  Hearings were had at various times and on 23 October, 1933, the referee filed a comprehensive report setting out in detail his findings of fact and conclusions of law.  There are ninety-three findings of fact and thirty-three conclusions of law.

The referee concluded that the endorsement on Bond No. 1267548 constituted Bond No. 1267548 a continuation of Bond No. 1096651. He found as a fact that notice and proof of loss furnished the surety were in compliance with the terms of the bond (findings 82 and 83). Upon the findings and conclusions of law the referee declared that the plaintiff was entitled to judgment against E. A. Davidson for the sum of $38,144.57, and that the plaintiff was entitled to a judgment against the defendant surety company for the sum of $25,596.71, said judgment to be discharged "upon the payment of $10,000, and interest thereon, from 19 March, 1932."

Both parties filed exceptions to the referee's report, and thereafter such exceptions were heard by the trial judge, who made certain findings

and certain amendments to the report of the referee, and adjudged that the plaintiff was entitled to recover of the defendant surety the sum of $20,853.44, "said judgment . . . to be discharged upon the payment by said defendant of the sum of $10,000, with interest . . . from 19 March, 1932," etc.

From the foregoing judgment the defendant surety appealed.

*Gray & Christopher for plaintiff.*
*S. W. Black and Edwin B. Whitaker for Fidelity and Casualty Company of New York.*

BROGDEN, J. (1) Do Fidelity Bonds Nos. 1096651, dated 21 May, 1926, and 1267548, with endorsement thereon, constitute one bond or contract of indemnity, or are they separate and independent contracts of indemnity?

(2) Was notice given by the plaintiff as required?

(3) Was claim for loss given in accordance with the terms of the contract?

The first bond, or No. 1096651, provided that "the right to make a claim hereunder shall cease at the end of fifteen months after the termination, expiration, or cancellation of this bond." According to finding of fact No. 80 invalid loans made between 21 May, 1926, and 21 May, 1929, aggregate $21,698.90. Obviously no claim was made for these loans within a period of fifteen months from 21 May, 1929, and hence there could be no recovery for losses sustained from 21 May, 1926, to 21 May, 1929, when Bond No. 1267548 was given, unless the two bonds are to be deemed and construed as one contract. The first bond, or Bond No. 1096651, provided that it should "continue in force until terminated or canceled as hereinafter provided." The method specified in said bond for such termination or cancellation rested upon "a written notice stating when the cancellation takes effect served on employer or sent by registered letter . . . at least thirty days prior to the date that the cancellation takes effect." There is no evidence and no finding of fact that such notice was ever given. Consequently, it must be determined whether Bond No. 1267548, given on 21 May, 1929, is in itself a termination and cancellation of the former bond. Bond No. 1267548 carried a rider constituting a part of the bond itself, and this rider contained the following clause, to wit: "(a) This individual bond is issued as a continuation of the individual bond . . . numbered 1096651, dated 21 May, 1926. (b) And the said old bond and this renewal bond shall be deemed one bond. (c) The company's aggregate liability under both bonds for all loss or losses shall not exceed the greatest amount for which the company is liable under one of the said bonds."

The foregoing language is plain and unequivocal, and it would seem manifest that the defendant surety company has chosen apt words to weld the two instruments together and make them one. It has been held that "when two or more papers are executed by the same parties at the same time, or at different times, and show on their face that each was executed to carry out the common intent, they should be construed together." *Perry v. Surety Co.,* 190 N. C., 284, 129 S. E., 721. Moreover, if the language of the instrument or instruments is ambiguous, they must be construed most strongly against the defendant, who chose words to suit itself and sold them to the bank for compensation for the purpose of indemnifying against loss occasioned by unfaithful officers. In addition, it has been generally held that in determining the meaning of an indefinite contract, the construction placed upon the contract by the parties themselves will usually be adopted by the Court. *Wearn v. R. R.,* 191 N. C., 575, 132 S. E., 576; *Cole v. Fibre Co.,* 200 N. C., 484, 157 S. E., 857; *Loan Association v. Davis,* 192 N. C., 108, 135 S. E., 463.

In view of the language of Bond No. 1267548, the construction thereof by the parties, and the pertinent principles of law, it is concluded that the two bonds constitute one contract of indemnity, and therefore Bond No. 1096651, as amended and modified by Bond No. 1267548 bases liability upon certain express conditions specified therein, to wit: (a) "That the employer shall, within a reasonable time and at all events not later than thirty days after discovery of loss hereunder, notify the surety thereof," etc. (b) "That claim for loss hereunder shall be itemized with full particulars, including the amount and date of each item, . . . and presented to the surety within three months after the discovery of such loss." (c) "That any suit . . . to recover against the surety on account of loss hereunder shall be brought before the expiration of twelve months from the discovery of such loss," etc. In other words, liability rests upon notice in thirty days after discovery of loss, itemized proof of loss within three months after such discovery and suit within twelve months from such discovery.

The bank was closed on 3 October, 1931, and on 6 November, 1931, the liquidating agent wrote a letter to the surety declaring the intention of plaintiff "to put you on notice as to shortage which has become apparent."

The referee concluded that the notice of loss given by the liquidating agent complied with the contract. This conclusion was approved by the trial judge and there was competent evidence to support it. The liquidating agent testified that he mailed a letter giving the notice "within three or four days after I discovered the certificates of deposit outstanding, which were marked paid upon the register."

On 19 December, 1931, an itemized proof of loss was submitted to the defendant specifying in detail certain claims arising from the unlawful and wrongful acts of the principal in the bond. This proof of loss was furnished "within three months after discovery of such loss." There are certain discrepancies between the proof of loss so furnished and the proof produced at the trial, but the referee concluded that the proof of loss was in compliance with the contract and this conclusion was approved by the trial judge, and there was evidence to support such conclusion.

The record discloses that the suit was brought within twelve months from the discovery of the loss and a careful study of the findings of fact, the exceptions thereto, and the rulings of the trial judge do not convince the Court of reversible error.

The question of liability of the surety upon both bonds was not presented in the trial court, and for that reason has not been considered in determining the rights of the parties in the case.

Affirmed.