BARNHILL and WINBORNE, JJ., dissent.
Claim for compensation under the Workmen's Compensation Act for the death of George Bradshaw McPherson.
The Industrial Commission found that the deceased was an employee of defendant Southern Waste Paper Company, and that his injury by accident, resulting in his death, arose out of and in the course of his employment by the defendant.
Upon appeal to the Superior Court, the award of the Industrial Commission was reversed upon the ground that on the facts found and established by the record the deceased was an independent contractor.
Plaintiff excepted and appealed.
The plaintiff's appeal presents the question whether, upon the facts shown by the record, and found by the Industrial Commission, the plaintiff's intestate was, with respect to the work in which he was engaged at the time of his fatal injury, an employee of the defendant Waste Paper Company, or an independent contractor. The court below held that he was not an employee, but an independent contractor, and on that ground reversed the award of the Industrial Commission, and denied compensation.
While the findings of fact by the Industrial Commission, when supported by competent evidence, are conclusive, the rulings of the Commission are subject to review on questions of law, (a) whether the Industrial Commission has jurisdiction, (b) whether the findings are supported by the evidence, (c) whether upon the facts established the decision is correct.Aycock v. Cooper, 202 N.C. 500, 163 S.E. 569; Buchanan *Page 49 v. Highway Com., 217 N.C. 173, 7 S.E.2d 382; Logan v. Johnson,218 N.C. 200, 10 S.E.2d 653; Rader v. Coach Co., 225 N.C. 537.
The generally accepted definition of an independent contractor is that he is one who exercises an independent employment and contracts to do a piece of work according to his own judgment and method, without being subject to his employer except as to the results of his work. Aderholt v.Condon, 189 N.C. 748, 128 S.E. 337; Greer v. Construction Co.,190 N.C. 632, 130 S.E. 739. In the recent case of Hayes v. Elon College,224 N.C. 11, the distinction between an employee entitled to benefits under the Workmen's Compensation Act and an independent contractor was discussed and the incidents of those relationships analyzed by Justice Barnhill, with citation of numerous authorities. The principles of law therein stated seem now to be well settled, but difficulty frequently arises in the application of these general principles to the particular facts of individual cases.
In the case at bar it appears from the evidence and findings of fact reported by the Industrial Commission that defendant's business was that of handling and processing waste paper, and that the defendant engaged the services of the deceased, who was a machinist or millwright, to construct a metal conveyor belt to be used in defendant's plant, in the course of its business, to convey waste paper to a paper press or baler; that the conveyor, which was 30 feet long and 5 feet wide, was to be constructed from materials obtained from, and on the premises of, the Southern Converting Company, a separate corporation dealing in scrap metal. Defendant's president had formerly been vice-president of the Converting Company. The deceased had not theretofore done any work for or been employed by the defendant, but had worked for the Converting Company.
As bearing on the question at issue the Industrial Commission reported the testimony of a witness, a brother-in-law of the deceased, to the effect that deceased was working by the hour at $1.00 an hour, and was employed there 5 or 6 weeks before his injury, "that deceased had no written contract with the Southern Waste Paper Company, and that there was no verbal contract." It appeared, however, that this witness was not present when the contract for the construction of the conveyor was made, and that he had seen the deceased at work on the conveyor belt on only one occasion.
The Industrial Commission also included in its report the substance of the testimony of the president of defendant Waste Paper Company to the effect that he made the agreement with the deceased; that he outlined to him what he wanted done by a rough sketch of the plans, length, width and purpose of the conveyor, and worked out the basis on which deceased would take the job; no definite sum was set, but the deceased agreed to *Page 50 
do the work for $1.00 per hour, the defendant to furnish the materials, the work to be done on the yard of the Converting Company. This witness testified that he had no agreement with deceased, nor did he give directions, as to the number of hours a day he should work, when he should start or quit, or when he should do specific pieces of work, or what help, if any, he should employ; that all he was interested in was to have the job done as expeditiously as possible, and that he did not attempt to direct the deceased as to details of the work.
It also appeared from the testimony that the defendant had not had occasion to employ a full-time mechanic, and did not keep a social security sheet for the deceased. The method of payment under the agreement was that deceased would send in each week a statement of the number of hours he had worked and the amount he had spent for incidentals which were entered on the books, and checks for his labor and expense, if any, were issued to him each week. Most of the materials purchased by deceased for the job were billed directly to defendant. Deceased worked regularly each week for five eight-hour days and one four-hour day. This continued for five or six weeks. After his death check was sent claimant for $40, marked "payment in full for labor by George B. McPherson from Dec. 30, 1944, to date of injury." The injury occurred 3:15 p.m. Friday, January 5, 1945. The work was not finished at the time of his death. While there was no evidence that any instructions as to the work were given deceased while the conveyor was under construction, an employee of defendant testified he made a suggestion about the location of grease cups which was complied with by deceased. Defendant's president also testified he was around where the work was being done but did not recall giving any instructions as to the construction; that he may have talked to deceased about various designs but did not recall any specific changes he had suggested to him; may have helped him some in picking up parts for him; did not know that deceased employed any help, but the understanding was he would be paid for any disbursements for help or material. There was no evidence that deceased had employed any help.
It also was found by the Industrial Commission that the deceased maintained no office or organization as a contractor, and that prior to his work for the defendant on the conveyor he had worked on several defense jobs as an employee for wages.
We have stated the evidence appearing in the record in greater detail than is embraced in the specific findings of the Industrial Commission, but in substantial accord therewith. Upon this evidence the Commission found and concluded as a matter of law that the deceased was an employee of the defendant and not an independent contractor, and awarded compensation to the plaintiff under the statute. *Page 51 
The question here presented is not without difficulty. The testimony of plaintiff's witness that deceased was working for defendant at an hourly wage without written or verbal contract would have tended to sustain the conclusion that deceased was an employee within the meaning of the Act, but for the fact that this witness was apparently not informed as to the terms of the contract under which the deceased was working.
On the other hand, the testimony of defendant's president that the deceased, who had never theretofore worked for defendant, had contracted to do a specified piece of construction work according to his own judgment and method without being subject to the defendant except as to the results of his work, and that at the time of his injury he was exercising an independent employment, not on the immediate premises of defendant, would seem to support the ruling of the court below that the relationship of deceased to the work on which he was engaged at the time was that of an independent contractor. However, there are other circumstances appearing in the evidence which might be understood to militate to some extent against this view, in that they tend to show that some control was exercised by defendant over the details of the construction. Johnson v. Hosiery Co.,199 N.C. 38, 158 S.E. 591. In this situation and as material to the correct answer to the question at issue, we note that the parties themselves appear to have treated the contract as one of employment only, at an hourly wage, payable weekly, for an indefinite period, and that deceased gave in his time to the bookkeeper for entry on the books of the number of hours worked each week, and defendant issued to him checks accordingly, marked for labor performed. While the conveyor belt was not constructed on the immediate premises of defendant, it was intended for use in the course of the business of the defendant in defendant's plant to facilitate the conveyance of waste paper to the presser or baler. It is a well settled principle of law in the interpretation of contracts that in determining the meaning and effect of the terms of a contract, where its nature and intent are not clear, the construction placed upon the contract by the parties themselves will usually be adopted by the Court. Belk's Department Store v. Ins. Co.,208 N.C. 267, 180 S.E. 63; Hood v. Davidson, 207 N.C. 329,177 S.E. 5; Pick v. Hotel Co., 197 N.C. 110, 147 S.E. 819; Wearn v. R. R.,191 N.C. 575, 132 S.E. 576; Council v. Sanderlin, 183 N.C. 253 (259),111 S.E. 365; Harten v. Loffler, 212 U.S. 397; National Bank of Burlingtonv. Fidelity Casualty Co., 126 F. (2), 920; Buden v. New York Trust Co., 83 F. (2), 168; Navy Gas Supply Co. v. Schoech, 105 Col., 374; Fullertonv. U.S. Casualty Co., 184 Iowa 219; Restatement Law of Contracts, sec. 235 (e); 12 Am. Jur., 787. As was said by Chief Justice Stacy in Cole v.Fibre Co., 200 N.C. 484, *Page 52 157 S.E. 857: "In the construction of contracts . . . no court can go far wrong by adopting the ante litem motam practical interpretation of the parties, for they are presumed to know best what was meant by the terms used in their engagements."
In Old Colony Trust Co. v. Omaha, 230 U.S. 100, it was said: "Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence."
In Meyer Sons Co. v. Grady, 194 Wis. 615, it was said that in the interpretation of a contract of employment weight should be attached to "the construction given to the contract by the parties themselves during the period of its execution; and the acts of the parties which indicate their relationship to each other."
In this view we are constrained to hold that there was support in the evidence for the finding and conclusion of the Industrial Commission that the deceased was an employee rather than an independent contractor. Nor may the claimant be excluded from compensation on the ground that the employment of the deceased was "both casual and not in the course of the trade, business, profession or occupation of his employer." G.S., 97-2
(b). In accord with the interpretation of those terms set forth in Johnsonv. Hosiery Co., 199 N.C. 38, 153 S.E. 591, the work on which deceased had been employed continuously for five or six weeks in the construction of facilities for handling material in defendant's plant may not be held to be either casual or not in the course of defendant's business. Cf. Burnett v.Paint Co., 216 N.C. 204, 4 S.E.2d 507.
For the reasons stated we conclude there was error in the ruling of the court below, and that the judgment must be
Reversed.
BARNHILL and WINBORNE, JJ., dissent.