HOME SAVINGS BANK, SSB OF EDEN, PLAINTIFF v. COLONIAL AMERICAN CASU-
ALTY AND SURETY COMPANY, AND COMMUNITY BANK SERVICES, INC.,
DEFENDANTS

No. COA03-1110

(Filed 6 July 2004)

**1. Insurance— fidelity bond—ambiguous language—knowl-
edge of dishonest act—interpreted for insured**

Ambiguous language in a fidelity bond was correctly inter-
preted for the insured, and summary judgment was correctly
granted for plaintiff, where a bank contended that a provision

ending coverage when it first learned of a dishonest act by an employee applied only to knowledge gained after the bond became effective, while defendant-insurer contended that the provision applied to knowledge gained at any time.

## 2. Appeal and Error— cross-appeal—mootness

A cross-appeal was moot where it was dependent on another issue correctly resolved for plaintiff by the trial court.

Appeal by defendant Colonial American Casualty and Surety Company, and cross-appeal by plaintiff, from memorandum and order entered 21 April 2003 and judgment entered 12 May 2003 by Judge Judson D. DeRamus, Jr. in Rockingham County Superior Court. Heard in the Court of Appeals 28 April 2004.

*Forman Roassabi Black, P.A., by T. Keith Black, and Wright, Robinson, Osthimer & Tatum, by Thomas S. Schaufelberger, pro hac vice, for defendant-appellant Colonial American Casualty and Surety Company, and for defendant/cross-appellee Community Bank Services, Inc.*

*Pinto Coates Kyre & Brown, P.L.L.C., by David L. Brown and Deborah J. Bowers, for plaintiff-appellee/cross-appellant.*

ELMORE, Judge.

Defendant Colonial American Casualty and Surety Company (Colonial) appeals from judgment entered following a memorandum and order denying its motion for summary judgment against plaintiff Home Savings Bank, SSB of Eden (Home Savings), and granting summary judgment in favor of Home Savings against Colonial. Home Savings cross-appeals from that portion of the memorandum and order granting summary judgment in favor of defendant Community Bank Services, Inc. (Community) against Home Savings. For the reasons stated below, we (1) affirm the memorandum and order granting summary judgment in favor of Home Savings against Colonial, and therefore affirm the subsequent judgment, and (2) dismiss Home Savings' cross-appeal as moot.

The relevant facts are as follows: Colonial sold to Home Savings, a North Carolina State Savings Bank, a fidelity bond effective for the period 1 January 2001 to 1 January 2002. The bond was sold to Home Savings by and through Colonial's agent, Community. The bond provided, among other things, for indemnification of Home

**HOME SAV. BANK v. COLONIAL AM. CAS. & SURETY CO.**

[165 N.C. App. 189 (2004)]

Savings in the event of a loss caused by dishonest or fraudulent acts committed by an employee, subject to certain limitations expressly contained therein.

Colonial required Home Savings to complete an application before agreeing to issue the bond. On 8 December 2000, Home Savings' President, W. Thomas Flynt, met with a representative of broker Community and completed the application for bond coverage. In its written discovery responses, Colonial stated that it drafted the application, which "basically follows" a standard form widely used in the bond industry. Flynt testified at his deposition that he responded truthfully to each question on the application. The application for bond coverage did not contain any questions asking if Home Savings was aware of any prior dishonest or fraudulent conduct on the part of its employees, and Home Savings did not divulge any such knowledge.

At the inception of the bond's coverage period on 1 January 2001, Marsha Rice Gibson was employed by Home Savings as an assistant vice president. Gibson had worked for Home Savings since October 1984, when she was hired as a teller. In 1985, Home Savings' management became aware that Gibson had been convicted in 1981 of embezzling funds from a previous employer, Northwestern Bank.[1] After obtaining assurances in August 1981 from its fidelity bond carrier at the time, CNA Insurance, that Gibson would continue to be covered as an insured employee under its then-current fidelity bond, Home Savings retained Gibson as an employee. Gibson remained in the employ of Home Savings until May 2001, when it was discovered that Gibson had, over several years, embezzled over one million dollars from certain customer accounts at Home Savings.[2] On 2 July 2001, Gibson entered a plea of guilty in federal court to one count of "theft, embezzlement, misapplication by a bank official."

Home Savings thereafter made a claim under the bond for the loss caused by Gibson's embezzlement and submitted supporting docu-

---

1. Gibson did not disclose her embezzlement conviction on her application for employment with Home Savings, instead stating that she left Northwestern's employ because she was getting married. After Gibson made restitution and served almost three years of probation, the United States District Court for the Middle District of North Carolina entered a "Certificate of Vacation of Conviction" with respect to Gibson's 1981 conviction on 2 May 1984, approximately five months prior to Gibson's employment by Home Savings.

2. The total amount embezzled by Gibson was later determined to be $1,745,562.21.

mentation as requested by Colonial. By letter to Home Savings dated 12 November 2001, Sandra M. Bourbon, claims counsel for Colonial's parent company, Zurich North America, rejected Home Savings' claim, noting that Home Savings was aware of Gibson's 1981 embezzlement conviction at the time Colonial issued the 2001-2002 bond. As the sole basis for rejecting Home Savings' claim, Bourbon's letter cited language contained in Section 12 of the bond, which provided in pertinent part as follows:

> This bond terminates as to any employee or any partner, officer, or employee of any processor (a) as soon as any director, titled officer or risk manager of any Insured not in collusion with such person learns of any dishonest or fraudulent act committed by such person at any time, whether in the employment of the Insured or otherwise, whether or not of the type covered under Insuring Agreement (A), against the Insured or any other person or entity . . . .

> . . . .

> Termination of the bond as to any Insured terminates liability for any loss sustained by such Insured which is discovered after the effective date of such termination.

In closing, Bourbon's letter stated "we conclude that [Home Savings'] claim would not be covered under the bond, as the coverage pertaining to Marsha Rice Gibson was terminated once the bank became aware of her prior dishonesty."

Home Savings responded by filing a complaint in Rockingham County Superior Court on 5 April 2002, seeking a declaratory judgment obligating Colonial to pay Home Savings the policy limits of liability under the bond and asserting a claim for breach of contract against Colonial, and also bringing claims against bond broker Community for breach of contract, breach of fiduciary duty, and negligence. On 8 August 2002, the trial court denied the respective motions to dismiss brought by defendants Colonial and Community pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). On 24 March 2003, defendants Colonial and Community each filed motions for summary judgment. On 2 April 2003, Home Savings filed a cross-motion for summary judgment against Colonial, asserting specifically that Home Savings "is entitled to recover for its loss under the terms of the applicable fidelity bond up to the limits of the bond."

On 14 April 2003, a hearing was held on the cross-motions for summary judgment of Home Savings and Colonial, and on Community's motion for summary judgment. By its memorandum and order entered 21 April 2003, the trial court: (1) denied Colonial's motion for summary judgment against Home Savings; (2) allowed Home Savings' motion for summary judgment against Colonial; (3) allowed Community's motion for summary judgment; and (4) denied Home Savings' motion for summary judgment against Community.[3] Regarding the cross-motions of Colonial and Home Savings, the trial court stated as follows:

> These parties disagree about the language in the policy's "TERMINATION OR CANCELLATION" section on pages 20 and 21 [of the bond] . . . which reads in pertinent part, "(t)his bond terminates as to any employee or . . . officer . . . as soon as any director, titled officer or risk manager of any Insured not in collusion with such person learns of any dishonest or fraudulent act committed by such person at any time . . . ." The disagreement centers on the words "as soon as . . . learns."

> [Home Savings] contends that this language pertains only to knowledge first obtained after the policy's effective date. Defendant Colonial contends that it also pertains to knowledge of dishonesty of the employee obtained for the first time by [Home Savings] in 1985.

> . . . .

> [Home Savings'] contention that the language "as soon as . . . learns" implies learning or discovery after the effective date of the policy is a reasonable one in the context here in which a new policy is being issued by a new insurer, and the new insurer has not been misled as of the effective date by the insured in the preceding application. If the language in question is not clear as contended by [Home Savings], then it is at least ambiguous and must be construed in [Home Savings'] favor.

---

3. The record indicates that Home Savings did not actually move for summary judgment against Community, but rather opposed Community's motion for summary judgment, arguing that material issues of fact existed with respect to these claims. In allowing Community's motion and purporting to deny Home Savings' "motion" with respect to Community, the trial court noted in its memorandum and order that "the conclusion that summary judgment is appropriate against defendant Colonial negates any alternative liability of defendant Community dependent upon a lack of coverage by defendant Colonial."

Thereafter, on 12 May 2003, the trial court entered judgment in favor of Home Savings against Colonial in the amount of $1,000,000.00, representing the principal sum due under the bond, plus interest and costs.

Colonial now appeals from the 21 April 2003 memorandum and order allowing Home Savings' motion for summary judgment, and the subsequent judgment entered 12 May 2003. Home Savings cross-appeals from the 21 April 2003 memorandum and order granting summary judgment in favor of Community.

*Standard of Review*

Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). "On appeal, this Court's standard of review involves a two-step determination of whether (1) the relevant evidence establishes the absence of a genuine issue as to any material fact, and (2) either party is entitled to judgment as a matter of law." *Guthrie v. Conroy*, 152 N.C. App. 15, 21, 567 S.E.2d 403, 408 (2002) (citations omitted).

*Colonial's Appeal*

[1] In the present controversy between Colonial and Home Savings, neither party contends that any material facts are in dispute. Rather, the parties' dispute arises from their differing interpretations of the bond's terms, specifically the language concerning termination of coverage as to any employee upon Home Savings learning that the employee has committed a dishonest or fraudulent act. In its lone assignment of error, Colonial argues the trial court erred in ruling that because Home Savings first learned of Gibson's 1981 embezzlement *before* the bond's coverage period commenced, as a matter of law the termination clause did not disqualify Gibson from coverage, resulting in coverage under the bond for the loss caused by Gibson's subsequent embezzlement. Colonial contends that the termination clause must be interpreted to disqualify Gibson from coverage, essentially arguing that the bond terminated as to Gibson at its inception because Home Savings was aware *before the coverage period began* of her prior dishonest conduct. We disagree with Colonial's assertions.

**HOME SAV. BANK v. COLONIAL AM. CAS. & SURETY CO.**

[165 N.C. App. 189 (2004)]

Colonial urges this Court to resolve the controversy in its favor by adopting the construction of the bond's termination clause it advocated unsuccessfully before the trial court. Simply put, Colonial argues that the termination clause operates to disqualify from coverage any employee whom Home Savings knows to have committed a dishonest act, regardless of whether Home Savings first learned of the act *before* or *after* the bond's coverage period commenced. Home Savings maintains the trial court correctly construed the termination clause as requiring that it discover, for the first time only *after* commencement of the coverage period, an employee's dishonest conduct in order for the bond coverage to terminate as to that employee.

At the outset, we note that in North Carolina, fidelity bonds "are in the nature of contracts of insurance, and are subject to rules of construction applicable to insurance policies generally." *Thomas & Howard Co. of Shelby, Inc. v. American Mut. Liability Ins. Co.*, 241 N.C. 109, 113, 84 S.E.2d 337, 340 (1954). It is well-settled in North Carolina that:

> '[w]here the language used in the policy is ambiguous and reasonably susceptible to more than one interpretation, judicial construction is necessary.' *If there is uncertainty or ambiguity in the language of an insurance policy regarding whether certain provisions impose liability, the language should be resolved in the insured's favor.* Moreover, exclusions from liability are not favored, and are to be strictly construed against the insurer.

*Eatman Leasing, Inc. v. Empire Fire & Marine Ins. Co.*, 145 N.C. App. 278, 281, 550 S.E.2d 271, 273 (2001), *rev. denied*, 356 N.C. 298, 570 S.E.2d 503, (2002) (emphasis added).

Our Supreme Court has stated as follows regarding judicial construction of fidelity bond language:

> [W]e must place such bonds in the general class of insurance policies, and construe them upon the same general principles; that is, most strongly against the company, and most favorably to their general intent and essential purpose. In [*American Surety Co. v. Pauly*, 170 U.S. 133, 42 L. Ed. 977 (1898)], Justice Harlan, speaking for a unanimous Court, says on page 144: "If, looking at all its provisions, the bond is fairly and reasonably susceptible of two constructions, one favorable to the bank and the other favorable to the surety company, the former, if consistent with the objects for which the bond was given, must be adopted, and this for the

reason that the instrument which the Court is invited to interpret was drawn by the attorneys, officers, or agents of the surety company. This is a well-established rule in the law of insurance."

*Bank of Tarboro v. Fidelity and Deposit Co.*, 128 N.C. 271, 275-76, 38 S.E. 908, 910 (1901) (citations omitted). Moreover, our Supreme Court has further stated that in construing fidelity bond terms, "if the language of the instrument or instruments is ambiguous, they must be construed most strongly ·against the [insurer], who chose words to suit itself and sold them to the bank for compensation for the purpose of indemnifying against loss occasioned by unfaithful officers." *Hood v. Davidson*, 207 N.C. 329, 334, 177 S.E. 5, 9 (1934).

We have carefully examined the language of the fidelity bond at issue in the present case with the foregoing principles in mind. We agree with the trial court's conclusion that the construction of the termination clause advanced by Home Savings—i.e., that coverage as to any employee under the bond only terminates where Home Savings initially discovers, *after the coverage period's commencement,* the employee's dishonest conduct—is a reasonable one. Significantly, the termination clause provides that the bond "*terminates . . . as soon as*" Home Savings "learns" of any dishonest conduct by an employee. Use of the present, rather than past, tense here suggests an intent by the parties that coverage under the bond must first commence *before* discovery of an employee's dishonest conduct will operate to terminate it. This interpretation is supported by the deposition testimony of Colonial's claims counsel, Bourbon, that "you have to have the bond for the coverage to terminate . . . you have to have the bond issued before . . . the termination provision can apply to the bond claim."

We conclude that a reasonable reading of the termination clause "could produce either the reading offered by [Home Savings] or the reading offered by [Colonial]; therefore, the policy is ambiguous." *Scottsdale Ins. Co. v. Travelers Indem. Co.*, 152 N.C. App. 231, 234, 566 S.E.2d 748, 750 (2002); *see also Wachovia Bank & Trust Co. v. Westchester Fire Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970) ("ambiguity in the terms of an insurance policy is not established . . . unless, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend.") There was evidence before the trial court, in the form of Colonial's discovery responses, that "Colonial drafted the . . . bond[,]" the text of which "derives primarily from the Surety Association of America ("SAA") Standard Form 24"

and which "Colonial then enhanced . . . with those changes routinely being offered in the marketplace." With respect to the termination clause presently at issue, Colonial's discovery responses specifically acknowledge, and Sandra Bourbon, Colonial's 30(b)(6) designee, confirmed in her deposition, that Colonial modified that part of the Standard Form 24's language, albeit not in a way material to the portions of that clause giving rise to the parties' present dispute.

Based on the principles endorsed by our Supreme Court regarding construction of fidelity bond language in *Bank of Tarboro v. Fidelity and Deposit Co.*, *supra*, and *Hood v. Davidson*, *supra*, as well as on the well-settled principle that ambiguous terms in a policy of insurance are to be resolved in the insured's favor, *see Eatman Leasing, Inc. v. Empire Fire & Marine Ins. Co.*, *supra*, we conclude that the trial court did not err in determining that the termination clause did not operate to disqualify Gibson from coverage under the bond. We affirm the trial court's order for summary judgment in favor of Home Savings and the subsequent entry of judgment against Colonial.

*Home Savings' Cross-Appeal*

[2] In granting bond broker Community's cross-motion for summary judgment against Home Savings, the trial court stated as follows in its memorandum and order entered 21 April 2003:

> As to the summary judgment motions pertaining to defendant Community Bank Services, Inc., the conclusion that summary judgment is appropriate against defendant Colonial [in favor of Home Savings] negates any alternative liability of defendant Community dependent upon a lack of coverage by defendant Colonial, therefore . . . defendant Community's cross motion [is] allowed.

We conclude that by affirming the trial court's grant of summary judgment in favor of Home Savings, Home Savings' cross-appeal with respect to Community is rendered moot and is hereby dismissed. "A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Roberts v. Madison County Realtors Ass'n*, 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996); *see also In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978) ("Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no

**IN RE APPEAL OF WEAVER INV. CO.**

[165 N.C. App. 198 (2004)]

longer at issue, the case should be dismissed[.]"), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297.

Affirmed in part and dismissed in part.

Judges BRYANT and GEER concur.